## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES DUNLAVEY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COURT OF COMMON PLEAS AND | : | NO. 02-3734 |
|    PROBATION OFFICE, | : | |
|    BUCKS COUNTY, ET. AL. | : | |

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS                                   November 26, 2003
UNITED STATES MAGISTRATE JUDGE

Presently before this court is a Petition for Writ of Habeas Corpus filed, *pro se*, pursuant to

28 U.S.C. § 2254.  James Dunlavey ("Petitioner") currently is incarcerated at the State Correctional

Institution at Graterford, Pennsylvania.  Petitioner seeks habeas relief based on claims of ineffective

assistance of counsel.  The Honorable William H. Yohn, Jr., referred this matter to the undersigned

for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1).  For reasons that follow, it is

recommended that Petitioner's habeas petition be denied and dismissed without an evidentiary

hearing.

## I.  BACKGROUND AND PROCEDURAL HISTORY[1]

The facts leading up to Petitioner's arrest and conviction, as summarized by the Superior

Court of Pennsylvania, are as follows:

> . . . [Petitioner] and . . . the victim, who knew each other, happened
> to be in the same bar at the same time on the evening of May 1, 1995.
> The barmaid "flagged" [Petitioner] and the manager supported that
> decision. [Petitioner] then got abusive with the manager and
> threatened to hit him with a motorcycle helmet he was carrying.

---

[1]The facts in this background and procedural history were gleaned from Petitioner's Petition for Writ of Habeas Corpus, the Commonwealth's Answer, inclusive of all exhibits thereto, and the record of the United States District Court for the Eastern District of Pennsylvania.

[Petitioner] then got into a confrontation with the victim. He called her a . . . ([derogatory term]) . . . and grabbed her breasts. She slapped him backhanded across the side of the face. [Petitioner] walked over to a nearby table where he had left his motorcycle helmet and picked it up by the strap. He then walked over to the victim and swung the helmet at her by the strap. She was hit on the side of the head and fell to the floor. Patrons took her to the hospital, where she stayed for several days.

The victim had a serious skull fracture and severe hemorrhaging. The neurosurgeon testified, if he had not operated, she would have died. He opined that one had to be hit with considerable force to have caused this kind of injury. As the result of being struck, the victim today has a large piece of her skull bone missing, she is deaf in her left ear and has numbness in her hand. Presently, she has a loss of equilibrium. The victim also underwent psychiatric treatment.

*Commonwealth v. Dunlavey*, No. 2939 at 1-2 (Pa. Super. Ct. Aug. 19, 1997).

On November 14, 1995, a jury convicted Petitioner of aggravated assault, simple assault, recklessly endangering another person, and disorderly conduct.[2] *See id.; see also* Respondent's Brief ("Resp.") at 3. Petitioner was sentenced on January 4, 1996, to an aggregate prison term of seven to twenty years. *See Dunlavey*, No. 2939 at 1. Petitioner's sentence was vacated and later, re-imposed. *Commonwealth v. Dunlavey*, No. 358 at 1 (Pa. Super. Ct. Oct. 29, 2001). Petitioner, in his brief to the Superior Court, asked:

a.    [w]as the jury's verdict against the weight and sufficiency of the evidence, particularly since the Commonwealth failed to negate self defense or to prove that [Petitioner] acted with the requisite intent;

b.    [w]as trial counsel Constitutionally ineffective;

c.    [d]id the prosecutor's remarks concerning the Warlocks Motorcycle Club deny [Petitioner] a fair trial;

---

[2]*See* 18 Pa.C.S.A. §§ 2702(a)(1) and 5503, respectively.

2

      d.      [d]id the [t]rial [c]ourt err in admitting testimony regarding the Warlocks Motorcycle Club;

      e.      [w]ere the [t]rial [c]ourt's instructions regarding provocation and self defense error; and

      f.      [d]id the [t]rial [c]ourt err in refusing to charge the jury on recklessness in occurrence with [*Commonwealth v. O'Hanlon,* 539 Pa. 478, 653 A. 2d 616 (1995) (italics included)].

*See Dunlavey*, No. 2939 at 2-3. On August 19, 1997, this court affirmed the judgment of sentence. *See id*. The Pennsylvania Supreme Court denied allowance of appeal on March 9, 1998. *See Commonwealth v. Dunlavey,* 716 A.2d 1247 (Pa. 1998).

On October 2, 1998, Petitioner filed, *pro se*, a petition for collateral relief, pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541, *et seq*. Thereafter, on November 4, 1998, without appointing counsel or holding an evidentiary hearing on the petition, the PCRA court denied the petition. *See Dunlavey,* No. 358 at 2. Furthermore, the PCRA court denied Petitioner's request to supplement his petition on December 5, 1998. On appeal, the Superior Court vacated the PCRA court and remanded the case for appointment of PCRA counsel. *See id.; (citing Commonwealth v. Dunlavey,* 750 A.2d 367 (Pa. Super. 1999) (unpub. mem.) On September 19, 2000, an evidentiary hearing with counsel was conducted.[3] *See id.* On January 9, 2001, the PCRA court denied relief. *See id.*

Petitioner asked the Superior Court to review alleged ineffectiveness of trial counsel in:

      a.      failing to challenge the court's jury instructions concerning whether testimony could be re-read to the jury during deliberations;

---

[3]Petitioner and his wife testified and an expert report of a toxicologist was submitted. *See Dunlavey,* No. 358 at 2.

3

      b.      failing to challenge the court's refusal of a particular charge of recklessness;

      c.      failing to challenge the court's error in the charge regarding provocation;

      d.      failing to introduce evidence of the victim's intoxication;

      e.      failing to introduce evidence of the injury to [Petitioner's] eye;

      f.      failing to object to the victim impact statement; and

      g.      failing to discover and introduce evidence, including after-discovered evidence.

*See id.* at 3. On October 29, 2001, the Superior Court affirmed the dismissal of Petitioner's PCRA petition, and on April 17, 2002, the Pennsylvania Supreme Court refused *allocatur*.[4] *See* Petitioner's Federal Habeas Petition ("Pet.") at 7.

On September 14, 2001, Petitioner timely filed the instant Petition for Writ of Habeas Corpus alleging that:

      a.      trial and appellate counsels [sic] were ineffective for failing to raise the issue of the trial court's failure to instruct the jury on the level of intent and the degree of recklessness necessary to sustain a conviction for aggravated assault in Pennsylvania;

      b.      trial and appellate counsels [sic] were ineffective for failing to object to the trial court's instruction regarding provocation;

      c.      trial and appellate counsels [sic] were ineffective for failing to introduce medical evidence of injury to Petitioner's "only eye;"

      d.      trial counsel was ineffective for failing to introduce Petitioner's broken glasses to support his claim of self-defense

---

[4]It should be noted that Petitioner filed numerous petitions to Modify Sentence to Facilitate Medical Treatment pursuant to 61 P.S. § 81. On April 23, 2001, the trial court held a hearing on Petitioner's second petition. On August 20, 2001, based upon the evidence presented at the hearing, Judge Clark ordered that Petitioner's sentence of seven to twenty years incarceration be modified to fifteen years of probation. The Commonwealth filed a notice of appeal and the appeal is currently pending before the Pennsylvania Superior Court.

or lack of intent;

e.    trial and appellate counsels [sic] were ineffective when they failed to object to the judge's instructions regarding the re-reading of testimony;

f.    trial and appellate counsels [sic] were not ineffective for failing to introduce evidence of the victim's intoxication through expert testimony;

g.    trial counsel was not ineffective for counseling Petitioner to relinquish his right to testify on his own behalf;

h.    trial counsel was ineffective for failing to object to the trial court's gross misrepresentation of the defendant's statement to the police; and

i.    trial counsel was ineffective for failing to argue relevant points of law in his closing argument.

*See* Pet. at 9-10.  The Commonwealth contends and this court finds that Petitioner's nine habeas claims are either unexhausted and procedurally defaulted, or meritless.

## II. DISCUSSION

A.  Exhaustion/Procedural Default

A petition for habeas corpus is a final effort to obtain relief when other legal remedies are foreclosed.  Therefore, a district court may consider and grant habeas corpus relief only if Petitioner meets his burden of proving that he has either exhausted all state remedies available to him with respect to each discrete allegation or is excused from doing so.  28 U.S.C. § 2254(b);[5] *see Rose v.*

---

[5] The exhaustion requirements of 28 U.S.C. § 2254 provide:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State; or
(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant . . .

*Lundy,* 455 U.S. 509, 519 (1982); *Toulson v. Beyer,* 987 F.2d 984, 987 (3d Cir. 1993), *aff'd.* 30 F.3d 1488 (3d Cir. 1994) (citations omitted). A claim is exhausted if it has been "fairly presented" once to the state's trial court, intermediate appellate court, and highest court. 28 U.S.C. § 2254(b); *Evans v. Court of Common Pleas, Delaware County, Pennsylvania,* 959 F.2d 1227, 1230-31 (3d Cir. 1992) (*citing Picard v. Connor*, 404 U.S. 270, 275 (1971)). The fair presentation requirement is met when the claim presented in the state court is the "substantial equivalent" of the claim asserted in the petitioner's federal habeas petition. *See Picard*, 404 U.S. at 278. *See Lesko v. Owens*, 881 F.2d 44, 50 (3d Cir. 1989) (*citing Picard*), *cert. denied* 110 S.Ct. 759 (1990); *Bisaccia v. Atty. Gen. of N.J.*, 623 F.2d 307, 310 (3d Cir. 1980) (*quoting Picard*), *cert. denied* 101 S.Ct. 622 (1980).

When an issue is unexhausted and further direct or collateral review in state court is foreclosed,[6] the claim is deemed procedurally defaulted for purposes of federal review. *See Coleman v. Thompson*, 501 U.S. 722, 735n.1 (1991); 28 U.S.C. § 2254(b)(1)(A); 42 Pa.C.S. § 9544(a)-(c). This court will dismiss a procedurally defaulted claim unless Petitioner demonstrates both "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law," or that the court's failure to consider the claims will result in a "fundamental miscarriage of justice."

"Cause" sufficient to excuse procedural default requires a showing that some objective factor, outside of counsel or Petitioner's control, prevented compliance with state procedural rules. *See*

---

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedures, the question presented.

[6] Collateral attack pursuant to the Pennsylvania Collateral Relief Act ("PCRA"), 42 Pa.C.S. § 9541, *et seq.* requires that 1) a claim has not been previously litigated or waived *and* 2) the previous failure to raise the issue was not the result of any rational, strategic or tactical decision by counsel. 42 Pa.C.S. § 9543(a)(3)-(4). An issue is previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue" or "it has been raised and decided in a proceeding collaterally attacking conviction or sentence." 42 Pa.C.S. § 9544(a)(2)-(3). An issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post conviction proceeding. 42 Pa.C.S. § 9544(b).

*Murray v. Carrier,* 477 U.S. 478, 488 (1986); *Caswell*, 953 F.2d at 862. "Actual prejudice" occurred if an error caused Petitioner "actual and substantial disadvantage." *See U.S. v. Frady*, 456 U.S. 152, 170 (1972). The burden of proof falls on Petitioner to establish both cause for the default and prejudice resulting therefrom. *See Teague v. Lane*, 489 U.S. 288, 298 (1989); *Coleman*, 501 U.S. at 754; *Caswell*, 953 F.2d at 962. Fundamental injustice has been defined to encompass instances in which newly discovered evidence makes it "more likely than not" that a reasonable juror would find a petitioner not guilty. *See Coleman*, 501 U.S. at 750; *Schlup v. Delo*, 513 U.S. 298 (1995); *see also Caswell*, 953 F.2d at 857.

B.    Procedurally Defaulted Claim - Ground Nine.

Petitioner claims that "trial counsel was ineffective for failing to argue relevant points of law in his closing argument." Pet. at 10. Petitioner never properly raised this claim in state court, thus, it is unexhausted. Moreover, Petitioner cannot return now to state court to remediate the default. Under the PCRA, Petitioner had only one year after judgment became final to file any PCRA petition. *See* 42 Pa.C.S. § 9545(b)(1). A judgment is deemed final, for purposes of the PCRA, "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Peterson* 1998 WL 470139 at *5 (*citing* 42 Pa.C.S.A. §9545(b)(3)). This statute of limitations, consistently applied since its effective date, creates a jurisdictional bar to Petitioner's successful institution of proceedings concerning his claims in state court. *See Commonwealth v. Peterkin,* 422 A.2d 638 (Pa.1998); *Commonwealth v. Banks,* 726 A.2d 374, 375-76 (pa. 1999).

Petitioner's conviction became final on June 7, 1998, when his opportunity to seek review of the Pennsylvania Supreme Court's denial of *allocatur* in United States Supreme Court expired.

This year expired on June 6, 1999 while Petitioner's first PCRA remained pending.

Relief nevertheless, could be available, if Petitioner were able to satisfy one of three narrow exceptions enumerated under 42 Pa.C.S. § 9545(b)(1).[7]  However, Petitioner neither claims recent discovery of relevant facts, nor suggests that a recently pronounced state or federal supreme court law applies retroactively to give him new rights.  Moreover, he has not alleged that any government officials interfered with his presentation of this claim.  Thus, his claims shall remain defaulted.

Moreover, Petitioner cannot successfully sustain a second PCRA action.  The PCRA requires that all petitions "including a second or subsequent petition" be filed "within one year of the date the judgment becomes final . . . " *id.*  If, notwithstanding the time-bar, Petitioner were to file a second PCRA action in state court, the instant federal grounds for relief would not be reviewable.  To obtain collateral review, Petitioner must demonstrate to the state PCRA court that (1) the claim has not been previously litigated or waived, and (2) previous failure to raise the issue was not the result of any rational, strategic, or tactical decision by counsel.  *See* 42 Pa.C.S. § 9543 (a)(3), (4).  An issue is deemed waived if "petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding."  42 Pa.C.S. § 9544(b). Petitioner's first PCRA failed to include these claims.  Inasmuch as the defaulted claims now raised

---

[7] 42 Pa.C.S. § 9545(b) provides:

> (b) Time for filing petition.
> (1) Any petition under this subchapter . . . shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

could have been, but were not presented in his first PCRA petition, they are waived.

Finally, to maintain a second PCRA action, Petitioner must make "a strong prima facie showing . . . [of] a miscarriage of justice . . . which no civilized society can tolerate." *Commonwealth v. Lawson*, 549 A.2d 107, 112 (Pa. 1988). Petitioner neither has asserted nor factually demonstrated such an injustice in this case. In fact, in open court and in writing, he admitted to committing the crimes at hand. Hence, exhaustion is impossible and a procedural default exists.

Federal courts, in appropriate circumstances, excuse procedural defaults. *See Caswell,* 953 F.2d at 862. Petitioner has neither alleged nor demonstrated facts sufficient to show cause to excuse his omission. Specifically, he has not adduced any evidence of objective factors, external to the defense, that prevented him from presenting this claim upon collateral review. *See id.* As Petitioner fails to establish cause for the default, inquiry into the prejudice prong is unnecessary. He cannot demonstrate actual innocence, either, such that no "fundamental miscarriage of justice" warrants habeas review or relief. *See Schlup*, 513 U.S. at 298. Accordingly, Petitioner's defaulted claim should be dismissed.

C.    Exhausted Ineffective Assistance of Counsel Claims — Claims One through Eight.

    1. Standard

Plaintiff's first eight ineffective assistance of counsel claims were properly exhausted and will be reviewed. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court may overturn a state court's resolution of the merits of a constitutional issue only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States." 28 U.S.C. § 2254(d)(1). The Supreme Court of the United States, in *Williams v. Taylor*,

529 U.S. 362 (2000), discussed the analysis required by § 2254(d)(1):

> [Under the "contrary to" clause] a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts. Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 1498. The Third Circuit Court, consistent with the *Williams v. Taylor* interpretation, has set

forth in *Marino v. Superintendent, SCI-Albion*, 171 F.3d 877 (3rd Cir. 1999), *cert. denied* 528 U.S.

824 (1999), a two tier approach to determining § 2254(d)(1) issues:

> First, the federal habeas court must determine whether the
> state court decision was "contrary to" Supreme Court precedent that
> governs the petitioner's claim. Relief is appropriate only if the
> petitioner shows that "Supreme Court precedent requires an outcome
> contrary to that reached by the relevant state court." *O'Brien* [*v.
> Dubois*], 145 F.3d [16], 24-25 [(1st Cir. 1998]. In the absence of such
> a showing, the federal habeas court must ask whether the state court
> decision represents an "unreasonable application" of Supreme Court
> precedent; that is, whether the state court decision, evaluated
> objectively and on the merits, resulted in an outcome that cannot be
> reasonably justified. If so, then the petition should be granted.

*Id.* at 891. The phrase "clearly established Federal law," as the term is used in Section 2254(d)(1), is

restricted "to holdings, as opposed to the dicta of [United States Supreme Court] decisions as of the

time the relevant state-court decision." *Williams*, 529 U.S. at 365. Under the "reasonable application"

clause,

> a federal habeas court may not grant relief simply because that court
> concludes in its independent judgment that the relevant state-court
> decision applied clearly established federal law erroneously or
> incorrectly. Rather, that application must also be unreasonable.

*Id.*

The AEDPA further provides for relief if an adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d)(2). State factual determinations, presumptively correct, may be rebutted only upon presentation of clear and convincing evidence. 28 U.S.C. § 2254(c)(1).

2. *Strickland* Standard.

Petitioner contends that trial and/or appellate counsel were ineffective for various reasons. To prevail on these claims that involve a mixed question of fact and law, Petitioner must meet the two-pronged federal constitutional standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hess v. Mazurkiewicz*, 135 F.3d 905 (3d Cir. 1998).

First, Petitioner must demonstrate that counsel's performance was so deficient as to fall below an objective standard of "reasonableness under prevailing professional norms." *Strickland,* 466 U.S. at 688. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed petitioner by the Sixth Amendment. In assessing an attorney's performance, every effort must be made "to eliminate the distorting effects of hindsight," reconstruct the circumstances of counsel's conduct, and evaluate the conduct from counsel's perspective at the time. *Id.* at 689. Furthermore, the court must indulge a strong presumption that the attorney's conduct fell within the wide range of reasonable professional assistance. *See id.* In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* (*citing Michel v. La.*, 350 U.S. 91, 101 (1955)).

After having adequately established that counsel's performance was constitutionally deficient, Petitioner must further show that the deficient representation prejudiced the defense. This requires

11

proof that "counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id.*; *Kramm v. U.S.*, 1996 WL 705962 at *4 (E.D.Pa. Dec. 2, 1996). With respect to prejudice, Petitioner must demonstrate a "reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Strickland*, 499 U.S. at 695. A reasonable doubt is a probability sufficient to undermine confidence in the outcome, but is less than a preponderance of the evidence. *See id.* at 693. If Petitioner fails to satisfy either prong of *Strickland,* his claim necessarily fails, thus, rendering inquiry into the prejudice prong unnecessary. *See id.* at 697.

a.    Failure to raise the issue of the trial court's failure to instruct the jury on the level of intent and the degree of recklessness necessary to sustain a conviction for aggravated assault.

Petitioner asserts that the "[t]rial court was [to] give proposed jury instructions on the level of intent and the degree of recklessness needed to sustain a conviction of aggravated assault in [Pennsylvania], in accordance with *Commonwealth v. O'Hanlon.*" Pet. at 9. The Superior Court held as follows:

> When reviewing a challenge to a jury instruction, an appellate court must review the charge as a whole. An instruction will be upheld if it clearly, adequately, and accurately reflects the law. The Standard Jury Instructions are not conclusive, but are merely a guide. Whether to request additional points for charge is one of the tactical decisions within the discretion of counsel, and trial counsel is not ineffective for failing to request an instruction as long as there is some reasonable basis.

> *       *       *

> [Petitioner] also argues that counsel was ineffective in failing to request a jury instruction regarding recklessness as provided in *Commonwealth v. O'Hanlon,* . . . A review of the record reveals the prosecuting attorney requested an instruction pursuant to *O'Hanlon;* however, the trial court denied the request. [Petitioner] admits that the court utilized a charge comporting with the standard jury instruction. Therefore, trial counsel cannot be found to be ineffective in failing to

12

request an instruction that the trial court specifically refused to allow, and
there is no arguable merit to [Petitioner's] claim of ineffectiveness.

*See Dunlavey,* No. 358 at 4, 6 (citations omitted).

Petitioner requested the *O'Hanlon* definition of recklessness with respect to aggravated assault:

"conduct that is likely to cause a life threatening injury." *See Commonwealth v. O'Hanlon,* 653 A.2d

616 at 618 (Pa. 1995). The trial court, however, defined recklessness in accordance with Pennsylvania

law:

> Aggravated assault is defined in criminal law of Pennsylvania as
> follows: "a person is guilty of aggravated assault, if he attempts to cause
> serious bodily injury to another or causes serious bodily injury to another
> intentionally, knowingly or recklessly, under the circumstances
> manifesting extreme indifference to the value of human life."
> So there are different facets to this crime. One can be found
> guilty of aggravated assault, if one attempts to cause serious bodily injury
> to another. And one can be found guilty of aggravated assault, if one
> causes serious injury to another and does so intentionally, knowingly or
> does so recklessly under circumstances manifesting extreme indifference
> to the value of human life.
> The statutory definition of recklessness is as follows: "a person
> acts recklessly with respect to a material element of an offense when he
> consciously disregards a substantial unjustified risk that the material
> element exists or will result from his conduct. The risk must be of such
> a nature and degree, that considering the nature and intent of the actor's
> conduct and the circumstances known to him, its disregard involves a
> gross deviation from the standard of conduct that a reasonable person
> would observe in the actor's situation.

(N.T. November, 14, 1995, pp. 106-07).

Although jury instructions in state trials are normally matters of state law, such instructions are

reviewable by a deferal court if they violate specific Constitutional standards imposed on the states by

the due process clause of the Fourteenth Amendment. *See Wheeler v. Chesney,* No.Civ.A. 98-5131,

2000 WL 124560, at *7 (Pa. E.D., Jan. 27, 2000)(*citing Hollowell v. Keve,* 555 F.2d 103, 106 (3d. Cir.

1977)).  The test "is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Cupp v. Naughton,* 414 U.S. 141, 147 (1973).  In assessing the effect of a challenged jury instruction, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."  *Boyde v. California,* 494 U.S. 370 (1990) (*citing Boyd v. United States*, 272 U.S. 104, 107 (1926); *see also Victor v. Nebraska,* 511 U.S. 1, 5 (1994) (holding that, when evaluating the adequacy of a jury instruction, the instruction must be read in its entirety, not in isolated fragments).

This court finds that in this case, the jury instruction, as a whole, was accurate.  In fact, the trial court read the statutory definition of the term recklessness verbatim.  Counsel cannot be held ineffective for failing to object to an instruction that accurately set forth the applicable law, rather than a more favorable charge.

Furthermore, Petitioner is unable to establish, by a reasonable probability, that, but  for counsel's failure to object, the result at trial would have been different.  Thus, Petitioner suffered no prejudice.  Moreover, since the prosecution also presented an *O'Hanlon* charge, the trial court was aware of it.  Second, since the court refused the prosecution to present an *O'Hanlon* charge, it would have been fruitless for Petitioner's counsel to raise the issue again.  Third, the trial judge adequately defined recklessness.  Last, the facts of the record show that Petitioner was reckless, by any definition.  Hence, a more specific instruction would not have been outcome determinative.

Clearly, the instruction given did not "so infect the entire trial that the resulting conviction violate[d] due process."  *Cupp,* 414 U.S. at 147.  Contrariwise, the trial court utilized the statutory definition of the term recklessness, a result that is neither contrary to nor an unreasonable application

14

of federal law.

      b.      Failure to object to the trial court's instruction regarding provocation.

Petitioner next alleges that the trial court gave the jury an erroneous provocation instruction,

thus, impacting the issue of self-defense.  The Superior Court, in deciding the propriety of Petitioner's

denial of PCRA petition, held that:

> [Petitioner's] last allegation of ineffectiveness concerning jury
> instructions is that counsel should have objected to the court's charge
> regarding provocation.  Counsel for [Petitioner] states in his appellate
> brief that the is unable to cite any supporting case law for this argument
> and does not agree with the issue as framed by [Petitioner].  A review of
> the record reveals that the instruction given by the court was derived from
> 18 Pa.C.S.A. section 505 and without error.  Therefore, there was no
> basis for counsel to object to the instruction, and there is no arguable
> merit to [Petitioner's] claim of ineffectiveness in this respect.

*See Dunlavey,* No. 358 at 6-7 (citations and footnote omitted).  Specifically, the trial court instructed

the jury on self-defense as follows:

> . . . I have to instruct you on the definition of self defense.  That
> terminology "self defense" is a vernacular; the legal terminology is called
> "justification." [Petitioner] claims that he swung his helmet at her in self
> defense.  Self defense, if justifiable, is a complete defense to the charge.
> And since the Commonwealth has the burden of convincing you beyond
> a reasonable doubt that at the time and place in question in that bar, he
> did not act in a justifiable self defense manner. The basic rule or
> definition  of self defense is that [Petitioner] is justified in using force
> against another person, if he reasonably believes he is in immediate
> danger of unlawful force from that person and reasonably believes it's
> necessary then and there to use the force which he does to protect
> himself.
>
>     Now the defense's contention is, as I understand it, having a glass
> eye and only having sight of one other eye, that he was struck in the so
> called good eye.  His glasses were dislodged and fell to the ground or
> floor and that this was an unprovoked striking by this young lady.  And
> that he expected her to strike again and therefore, he swung out with his
> helmet to protect himself.
>
>     The defendant's right to self-defense depends on what he

reasonably believes. Thus, the right of self defense may be available not only to a person which is in actual danger of an unlawful attack, but also to one who mistakenly believes that he is. A person is entitled to estimate the necessity for the force he employs under the circumstances as he reasonably believes them to be at the time. In the heat of conflict a person who has been attacked ordinarily has neither the time nor composure to evaluate carefully the danger and make the necessary judgment about how much force is needed tp protect himself. Consider the limitations of human nature when judging what the defendant believed and whether his beliefs were reasonable.

*    *    *

There was testimony presented to you that throughout the evening he was pulling on this young lady's halter top or tank top or muscle shirt. He was feeling her chest from time to time over her objections, causing her to move at least three occasions. Once again, it's up to you to determine which version you accept. But in order to employ force against another, in a so-called self defense situation, the actor, the [Petitioner], must be free from fault and provoking the difficulty which led to his use of force. [Petitioner], who is without fault in provoking a difficulty has no duty to retreat before using non-deadly force. He may stand his ground, and only consider the possibility of retreating when estimating the danger to him and the necessity of using force he employs. He can take such measures as he feels are justified to protect himself. This is the basic definition of justification.

(*N.T.* November, 14, 1995, pp. 110-114). Petitioner's primary contention is that the trial court should not have reiterated all of the above testimony during its charge, since it already had dismissed the indecent assault charge. Thus, Petitioner's asserts that counsel should have objected to this instruction. *See* Pet. at 10.

I find, however, the foregoing instruction to be proper. It comports with Pennsylvania's self-defense statute. *See* 18 Pa.C.S. §505. Furthermore, the trial court accurately defined provocation, using the actual context in which the events arose. Moreover, Petitioner cannot establish that, if his counsel had objected to the instructions, the outcome of this case would have been different. Most assuredly,

16

any further objection to this proper instruction would have been futile.

Therefore, the decision of the state court was not contrary to any Supreme Court law or an unreasonable determination of the facts presented in the state court proceedings. *See* 28 U.S.C. § 2254(d).

        c.      Failure to introduce medical evidence of injury to Petitioner's only eye.

Petitioner asserts that "[t]rial counsel failed to call witnesses who were at trial as medical professionals" to introduce evidence of Petitioner's injured eye. Pet. at 10. The Superior Court found no merit to this ineffectiveness claim:

> . . . [Petitioner] contends that counsel was ineffective in failing to introduce into evidence testimony concerning the injury to his eye. Prior to the altercation involved in the instant matter, [Petitioner] suffered an injury that left him with only one eye. According to [Petitioner's] version of the events, the victim in the present case struck [Petitioner's] remaining eye, allegedly provoking the altercation. [Petitioner] claimed that his eye doctor, Dr. Harmon Stein, confirmed he suffered an injury to his remaining eye. [Petitioner's] wife worked for the eye doctor and testified at the PCRA hearing that she was the custodian of records for the office, but was not called by defense counsel to testify to the injury. [Petitioner's] wife also presented the damaged eyeglasses her husband was wearing on the day of the incident, but stated that, although defense counsel was aware she had them, he did not introduce them at trial.
>
> At the previous hearing on July 2, 1996, it was established that [Petitioner's] eye doctor did not wish to testify regarding any eye injury. Further, trial counsel did not wish to call [Petitioner's] wife as a witness in the case, as he wanted to avoid the introduction of other damaging information to the case. Moreover, testimony was introduced at trial that the victim struck [Petitioner] in the face; therefore, the medical testimony would merely have corroborated this version of events. Accordingly, trial counsel cannot be found ineffective for pursuing a reasonable trial strategy, and [Petitioner] has failed to establish that he was prejudiced by any such omission.

*See Dunlavey,* No. 358 at 8-9 (citations omitted).

       In light of the foregoing summary, Petitioner cannot demonstrate that counsel's performance

was substandard. Counsel explained his reasonably strategic decision to not call the medical expert

as follows:

> [Dr. Stein] told me . . . that he didn't want to testify. That he did not
> ever indicate that he would be willing to testify. That he wouldn't
> possibly help me by calling him. That the report was such that the report
> would be better than his testimony. That his recollection of the injury
> was that it was slight, if noticeable. Now, whether he was telling me the
> truth or he was telling me things to avoid coming into court, I didn't
> know. And I talked that over with Jim and I talked it over with Jodi.
> But it was very obvious that he was going to be hostile and wasn't going
> to help us.

(N.T. July, 2, 1996, p. 29).

Counsel also made an informed and reasonable decision not to call Petitioner's wife as a

witness to testify about Petitioner's eye injury. Counsel

> . . . was concerned that calling Jodi as a witness would open her for
> cross-examination on other issues that had been minimized or
> avoided during the trial. And I made the tactical decision, I thought
> that she could testify as custodian of records and get it in, but that by
> doing so, she would be subject to other cross-examination that would
> hurt more than this record would help.

(N.T. July, 2, 1996, p. 31). The cross-examination that concerned counsel involved Petitioner's

membership in the Warlocks, a motor cycle gang. (*N.T.* July, 2, 1996, p. 36); *see also Dunlavey,* No.

2939 at 9-10. Counsel surely was not ineffective for considering these facts.

Furthermore, counsel's decisions did not prejudice Petitioner. The omitted medical evidence

merely would have corroborated facts already in evidence. Several eye witnesses testified that the

victim struck Petitioner, thus, establishing that Petitioner hit the victim. This medical evidence, then

would not have changed the outcome of the case, thus, Petitioner was not prejudiced and *Strickland*

is not met.

      d.     Failure to introduce Petitioner's broken glasses to support self-defense or lack of intent.

_____On direct appeal, the Superior Court addressed the legal significance of Petitioner's

broken glasses:

> [Petitioner] next claims hat the trial counsel was ineffective for failing to introduce his broken glasses into evidence at trial when he was aware of their existence. He claims that "since the Commonwealth's version of events was that he was slapped, the glasses would have served to rebut that contention as well as to boost the credibility of his statement to the police that he acted in self defense." Initially, we note that, although some Commonwealth witnesses testified that the victim merely slapped [Petitioner], and the victim herself stated that she backhanded him, other witnesses testified that the victim punched [Petitioner], as [the force of the impact staggered Petitioner] who was much larger than the victim, and the fact that his glasses were broken. Moreover, even if this claim is of arguable merit, at the evidentiary hearing trial counsel testified that he did not want to introduce the glasses by putting [Petitioner] or his wife on the stand because, as a matter of trial strategy, he wished to avoid other potentially prejudicial information being elicited from them on cross-examination. In addition, as to the admission of the glasses via any Commonwealth witness, trial counsel testified that he knew [Petitioner] and his wife were in possession of the glasses from the time of the accident until the time the case was ultimately tried. Thus, counsel inferred that the Commonwealth could attack the evidentiary value of the glasses. Finally, the trial court specifically rejected the testimony and his wife at the evidentiary hearing as incredible. The court did not believe, therefore, the testimony of [Petitioner's] wife that trial counsel informed her that he forgot to introduce the glasses as evidence. Given these circumstances, [Petitioner] has not established prejudice.

*See Dunlavey,* No. 2939 at 9-10 (citations omitted). Again, the Superior Court's determination that

the counsel employed reasonable trial strategies and that Petitioner was not prejudiced is properly

supported and should be upheld. *See Strickland   v. Washington*, 466 U.S. 668 (1984).

      e.     Failure to raise the issue of the Judge's instructions regarding the re-reading of

testimony.

Next, Petitioner complains that the jury was not "permitted to come back to the courtroom and have the stenographer read ([the instructions]) back to them or have [the judge] read it [back] from his notes." Pet. at 9. The Superior Court set forth the correct standard for evaluating jury instruction claims:

> When reviewing a challenge to a jury instruction, an appellate court must review the charge as a whole. An instruction will be upheld if it clearly, adequately, and accurately reflects the law. The Standard Jury Instructions are not conclusive, but merely a guide. Whether to request additional points for charge is one of the tactical decisions within the discretion of counsel, and trial counsel is not ineffective for failing to respect an instruction as long as there is some reasonable basis for the attorney's decision.

See Dunlavey, No. 358 at 4-5 (citations omitted). Then, the court determined that the trial court did not err and, therefore, counsel had no cause for complaint. Summarizing the instruction, the state court stated:

> When you're back deliberating, if you have some problems with trying to recall the testimony, unfortunately, you're not permitted to come back to the courtroom and have the stenographer read it back to you or have me read to you from my notes.
>
> It is within the trial court's discretion to deny the jury the ability to request that portions of testimony be re-read to them during deliberations. Here the court merely advised the jury in advance that it would not honor any such requests. Therefore, there is no arguable merit to this allegation, and counsel cannot be found ineffective in this regard.

Id.

The Third Circuit, likewise holds that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Boyde, 494 U.S. 370;

20

*see also Victor,* 511 U.S. at 1, 5 (holding that, when evaluating the adequacy of a jury instruction, the instruction must be read in its entirety, not in isolated fragments). Read in context, the trial court's discretion was properly invoked. Therefore, counsel could not have effectively raised a challenge to it. Thus, the decision of the state court was not contrary to or unreasonable application of clearly established federal law or unreasonable determination of the facts presented in the state court proceedings. *See* U.S.C. Section 2254(d).

       f.     Failure to introduce evidence of the victim's intoxication through expert testimony.

Petitioner alleges that "[t]rial counsel had in his possession [five] months prior to trial the medical reports showing the drugs and alcohol in [victim's] system at the time of the incident [and there] was never a valid and justifiable reason why trial counsel intentionally withheld this vital evidence at trial." Pet. at 9. Regarding this issue, the Superior Court concluded that:

> . . . [Petitioner] testified at the PCRA hearing that, after trial, he had the opportunity to review hospital records which showed the victim had ingested alcohol and various medications. The report of the toxicologist, entered into evidence at the PCRA hearing, stated that the "high alcohol level alone, and even more in combination with other drugs, would have resulted in an individual that would have impaired judgment, and lack of inhibitions.

> [Petitioner's] trial counsel testified that, on July 2, 1996, at a post-sentence motion ineffectiveness hearing, it was discussed during trial whether an expert should be hired to review the medical records of the victim, but a joint decision was made with [Petitioner] to forego the expert due to the expense. [Petitioner] and his wife testified at the PCRA hearing that counsel never discussed financial concerns with them.

> The PCRA court found the proposed testimony irrelevant. While drinking at a bar, [Petitioner] attempted, on several occasions, to grope the victim against her will. After the bartender at the establishment refused to serve any more alcohol to [Petitioner], he began to argue with the manager. As [Petitioner] was arguing with

21

the bartender, the victim attempted to intervene, eventually slapping [Petitioner] across the face. [Petitioner] then swung his motorcycle helmet at the victim and struck her in the head, rendering her unconscious. The PCRA court found that, under the circumstances of the case, whether the victim had consumed alcohol that evening was irrelevant. We find there is no error in the reasoning of the PCRA court, and that the PCRA court's findings are supported by the record. Thus, there is no merit to this allegation of ineffectiveness.

*See Dunlavey,* No. 358 at 7-8 (citations omitted). Since expert testimony would not have changed the outcome of the case, Petitioner was not prejudiced. Hence, habeas corpus relief cannot be granted with respect to this issue.

        g.     Trial counsel counseled Petitioner to relinquish his right to testify on his own behalf.

Petitioner claims that trial counsel "told [him not to testify] because he would be subject to 'chilling' cross examination and impeachment." Pet. at 9. This issue was addressed by the Superior Court which held that:

> [Petitioner] next claims that trial counsel was ineffective for advising [Petitioner] not to testify on his own behalf because trial counsel erred in believing [Petitioner] could be cross-examined as to prior *crimen falsi* convictions. We find no merit to [Petitioner's] claim. Trial counsel testified that he was concerned [that Petitioner's] prior conviction for conspiracy to intimidate a witness would be brought up by the Commonwealth should [Petitioner] take the stand. This prior conviction, which is within the ten year window of *Commonwealth v. Randall,* 515 Pa. 410, 415, 528 A.2d 1326, 1329 (1987), and also included a conviction for conspiracy to maliciously damage a building by means of fire, involved an instance where [Petitioner] and another individual, in response to being "flagged" from a bar, participated in an plan to burn the bar down. While fighting the blaze, a firefighter lost his life. Understandably, trial counsel did not want these facts to come out at trial, especially where the Commonwealth in the instant case had presented testimony that [Petitioner] had attempted to influence a witness from testifying. Contrary to [Petitioner's] claim, we conclude that such a conviction is arguably for a crime involving *crimen falsi.* In addition, and contrary to [Petitioner's] brief, the fact that [Petitioner's] prior

22

> convictions for the *crimen falsi* crimes of burglary, larceny, and receiving stolen property are outside the ten year window of *Randall,* does not mean that the convictions could not, under any circumstances, be used by the Commonwealth for impeachment purposes.
>
> Even if trial counsel may have been in error with regard to the advice given [Petitioner] regarding his prior convictions, we cannot conclude that [Petitioner] was prejudiced by counsel's advice since trial counsel also provided additional reasons why he advised [Petitioner] not to take a stand. As a matter of trial strategy, counsel was aware that [Petitioner's] statement had already been read into evidence during the Commonwealth's case-in-chief. Thus, counsel was of the opinion that [Petitioner's] version of what occurred was before the jury without providing the Commonwealth an opportunity to cross-examine on the statements contained therein. Thus, counsel cannot be found to be ineffective.

*See Dunlavey,* No. 2939 12-13. A review of the record indicates that counsel employed a reasonable trial strategy in encouraging Petitioner not to take the stand. There is no clear evidence of prejudice to Petitioner inasmuch as, his version of the frukus was introduced into evidence via a written statement. *See Strickland v. Washington*, 466 U.S. 668 (1984). Therefore, Petitioner has not shown that the Pennsylvania Superior Court's holding was unreasonable or contrary to United States Court precedent.

    h.    Failure to object to the trial court's gross misrepresentation of the Petitioner's statement to the police.

Petitioner told the police "I have only one eye which . . .[is] injured . . . I was scared she would attack me again before I could see . . . clearly again . . . so I swung at her with my helmet one time only . . . [i]t was not my intention to injure her. . . [a]s I stated, I never saw her coming and I have no idea why she attacked me." Pet. at 9. Petitioner alleges that this statement was distorted by the trial court. The Superior Court squarely addressed the above issue:

> [Petitioner's] first claim concerns the counsel's failure to

23

object to what he alleges was a critical misstatement by the trial court in its instructions to the jury regarding the hand-written statement he had given to the police. As noted above, this statement, in its entirety, was read to the jury. As written by [Petitioner], it included the following cryptic passage: "I WAS SCARED THAT SHE WOULD ATTACK ME AGAIN AS BEFOR[E] I COULD SEE CLEARLY AGAIN. SO I SWUNG AT HER WITH MY HELMET ONE TIME ONLY." In summarizing this evidence, the trial court stated: "He said amongst other things that he was scared that she would attack me again as before. I could see clearly again, so I swung at her with my helmet, one time only."

We find [Petitioner's] claim entitles him to no relief. Although we agree with [Petitioner] that a trial court should avoid material misstatements with regards to the evidence, no such material misstatement was made in the present case. When the statement is read in its entirety, it does appear that [Petitioner] was stating that, once he could see clearly, he swung at the victim. As [Petitioner] did not testify at trial, no other explanation was provided for the statement. Moreover, even if the trial court did misconstrue this statement, [Petitioner] has not demonstrated prejudice. In the present case, the trial court specifically instructed the jury that "you and you alone will determine what the facts are in this case . . . I do not tell you what the facts are." Additionally, the record indicates that [Petitioner's] statement was given to the jury during its deliberation. Thus, the jury had ample opportunity to review the exact statement. [Petitioner's] claim that the jury would assign more weight to the trial court's reiteration of a portion of the statement, rather than the whole statement as read to them and possessed by them during deliberations, is no more than speculation.

*See Dunlavey,* No. 2939 at 7-8 (emphasis in original). It is questionable whether the trial court misinterpreted Petitioner's statement. However, this court agrees with the superior Court's conclusion that Petitioner was not prejudiced, because the jury possessed Petitioner's statement in its entirety during deliberations. Therefore, the second prong of *Strickland* has not been met and habeas relief is inappropriate.

Petitioner's objections do not address the core issue, his guilt or innocence. Thus, he has demonstrated neither a violation of federal law nor resulting prejudice under *Strickland* in any of

24

his ineffcetive assistance of counsel claims.  Moreover, the state court properly analyzed each, in accordance with federal precepts.  None of the alleged errors are contrary to an unreasonable application of federal law.  Nor have the facts been misconstrued.  Accordingly, habeas relief is inappropriate and I make the following:

## <u>RECOMMENDATION</u>

AND NOW, this 26th day of November 2003, for the reasons contained in the preceding report, it is hereby RECOMMENDED that the Petition for Writ of Habeas Corpus pursuant to U.S.C. § 2254 be DENIED without an evidentiary hearing.  Petitioner has not demonstrated a substantial violation of any Constitutional right;  therefore, there is no probable cause to issue a certificate of appealability.

_____
CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE