# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES DUNLAVEY, | : | CIVIL ACTION |
| PETITIONER | : | |
| | : | |
| V. | : | |
| | : | NO. 02-3734 |
| COURT OF COMMON PLEAS AND | : | |
| PROBATION OFFICE OF | : | |
| BUCKS COUNTY, ET. AL. | : | |
| RESPONDENT | : | ATTORNEY I.D. 38874 |

### ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS

A seriatim response is being dispensed with in the interest of clarity.

I.    <u>FACTUAL HISTORY</u>

On May 1, 1995, the victim, twenty-one year old Katie Maschal, was a patron at T's Sports Bar in Croydon, Pennsylvania. Sometime late in the night, Petitioner and a friend, Mr. Bob Scott, entered the bar. At some point, Petitioner and Mr. Scott were seated on either side of Ms. Maschal at the bar. (N.T. 11/13/95, pp. 39-41). Petitioner touched Ms. Maschal several times that night. He groped her chest, pulled her shirt down, and put his hands on her leg. (N.T. 11/14/95, pp. 11-12, N.T. 11/13/95, p. 43). Ms. Maschal told the Petitioner to "Knock it off, get away." (N.T. 11/14/95, p.12). Petitioner persisted in his behavior despite Ms. Maschal efforts to move away from him. (N.T. 11/14/95, p.13).

Petitioner used loud and offensive language that night. At one point when Petitioner requested more alcohol, the bartender "flagged" him. The manager of the T's Sports Bar supported this decision. (N.T. 11/13/95, p.22). Petitioner became verbally abusive towards both the bartender and the manager. He called the bartender a "cunt." (N.T. 11/13/95, p.44). During this confrontation, Ms. Maschal stepped between Petitioner and the bartender and Ms. Maschal slapped Petitioner in the face. (N.T.

11/13/95, p.46).  Petitioner's glasses were knocked off.  Ms. Maschal was then physically restrained by several bar patrons.  Petitioner composed himself, recovered his glasses, picked up his motorcycle helmet, and called Ms. Maschal "a fucking cunt." (N.T. 11/13/95, pp. 24-26).  Petitioner then proceeded to swing his helmet at Ms. Maschal.  Petitioner struck Ms. Maschal, in the head with his motorcycle helmet knocking her unconscious. (N.T. 11/13/95, p. 108).  He then exited the bar without stopping to apologize or check if Ms. Maschal was injured. (N.T. 11/13/95, pp. 28-29).  Ms. Maschal was transported to Lower Bucks Hospital for treatment.

Ms. Maschal underwent emergency brain surgery due to a brain hemorrhage.  The neurosurgeon testified at trial that in his opinion, if he had not operated, Ms. Maschal would have gone into a coma and died. (N.T. 11/14/95, p. 84-88).  She is now permanently disabled.  She suffers from permanent deafness in her left ear, loss of sensation and feeling on her right side, frequent headaches, permanent scarring and sensitivity in the area of the incision, and short-term memory loss. (N.T. 11/13/95, pp. 109-10).  The sensitivity in the area of the incision stems from the removal of a portion of her skull in order to perform the surgery.  This has left a permanent soft spot where the skull was removed. (N.T. 11/14/95, p. 7).

Prior to the trial, Mr. Dunlavey contacted the bartender at her place of employment.  He offered her $500 not to testify.  He offered her other incentives not to testify at trial, and made mention of his connection to the Warlocks, a notorious motorcycle gang.  He told the bartender that several of his buddies in the Warlocks had offered to "take care of Katie"(referring to Ms. Maschal). (N.T. 11/13/95, pp. 55-58).

II.    <u>PROCEDURAL HISTORY</u>

On May 10, 1995, Petitioner James Dunlavey was charged with Aggravated Assault, Simple Assault, Indecent Assault, Recklessly Endangering Another Person, and Disorderly Conduct.  He was subsequently arrested on May 11, 1995.

On November 13, 1995, the case proceeded to a trial by jury before the Honorable Ward F. Clark.  At trial, Petitioner was represented by Raymond McHugh, Esq.  On November 14, 1995, Petitioner was convicted of Aggravated Assault, Simple Assault, Recklessly Endangering Another Person, and Disorderly Conduct.

On January 4, 1996, Judge Clark imposed a sentence of not less than seven (7) nor more than twenty (20) years to be served at a state correctional facility.  This sentence was imposed solely upon the Aggravated Assault charge. The trial court deemed the other charges to have merged with the Aggravated Assault charge for sentencing purposes.  A motion for reconsideration was filed and the sentence was vacated on January 23, 1996.  On February 26, 1996, a hearing was held in which Petitioner was represented by Jeffery P. Riddle, Esq.  At the conclusion of this hearing, Judge Clark sentenced the Petitioner to seven (7) to twenty (20) years to be served in a state penitentiary.

After the second sentencing hearing, Peter Hall, Esq. of the Bucks County Public Defender's Office assumed representation for the purpose of litigating post-sentence motions.  On July 2, 1996, an evidentiary hearing was held before Judge Clark.  All post-sentence motions were denied by operation of law on August 5, 1996.

Mr. Marc Neff, Esq. then began representation of Petitioner and filed a Notice of Appeal and a requested 1925(b) statement.  On October 2, 1996, Judge Clark filed an opinion in which he dismissed Petitioner's claims for lack of arguable merit.  On August 19, 1997, the Superior Court affirmed the lower Court's judgment of sentence. Petitioner

subsequently filed a Petition for Allowance of Appeal. This was denied on March 9, 1998.

Petitioner filed a P.C.R.A. motion on October 2, 1998.  This motion was denied on November 4, 1998.  On December 5, 1998, Petitioner's motion to supplement the P.C.R.A. motion was denied.

Petitioner subsequently filed a timely appeal with the Superior Court.  On April 1, 1999, Petitioner filed a brief with the Superior Court.  On June 8, 1999, the Commonwealth's motion to Quash Petitioner's appeal was denied.  The Superior Court remanded the case with instructions that counsel be appointed to represent the Petitioner.

On March 30, 2000, Ronald Elgart, Esquire was appointed to represent Petitioner. Counsel was granted the right to retain a toxicologist.  An evidentiary hearing was held on September 9, 2000.  On January 9, 2001, the court issued its opinion denying Petitioner's P.C.R.A. petition.  On October 29, 2001, the Superior Court affirmed the lower court's decision to dismiss the Petitioner's P.C.R.A. petition.  The Petitioner filed a petition for allowance of appeal with the Pennsylvania Supreme Court.  The Supreme Court denied the petition for allowance of appeal on April 17, 2002.  Petitioner then timely filed the instant Federal Habeas Corpus Petition with this Honorable Court.

It should be noted that the Petitioner filed numerous petitions to Modify Sentence to Facilitate Medical Treatment pursuant to 61 P.S. §81.  Specifically, on September 14, 1999, Petitioner filed such a petition and following two hearings on the matter, the trial court denied the petition on June 28, 2000. On November 16, 2000, the Petitioner filed a second Petition to Modify Sentence to Facilitate Medical Treatment pursuant to 61 P.S. §81.  On April 23, 2001, the trial court held a hearing on Petitioner's second petition.  On August 20, 2001, based upon the evidence presented at the hearing, Judge Clark ordered that the Petitioner's sentence of seven to twenty years incarceration be modified to fifteen years probation. On September 5, 2001, the Commonwealth filed a timely notice of

appeal, appealing the trial court's order of August 20, 2001.  Petitioner was released on appeal bail while that appeal was pending.  The Commonwealth appealed the decision of the trial court to release the defendant on appeal bail.

On July 30, 2002, the Pennsylvania Superior Court reversed the lower court's order to modify the Petitioner's sentence and grant appeal bail.  The Petitioner was subsequently returned to the custody of the Pennsylvania state correctional system.  The Petitioner then filed a timely petition for allowance of appeal with the Pennsylvania Supreme Court.  On December 18, 2002, the Supreme Court denied the Petitioner's petition for allowance of appeal.

On January 31, 2003, the Petitioner filed a Motion to Modify the Conditions of Sentence to Allow for Continuity of Care Pursuant to 61 P.S. §81.  On July 2, 2003, the Petitioner filed a Petition for Time Credit.  On September 30, 2003, the trial court held a hearing regarding each of these petitions.  Following the hearing and counsel's filings of memorandums of law, the court dismissed Petitioner's petition.

On January 5, 2004, Petitioner filed the instant Petitioner's Travers to the Magistrate Judge Report and Recommendation.

IV.  **ARGUMENT**

A.  TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO
RAISE THE ISSUE OF THE TRIAL COURT'S FAILURE TO
INSTRUCT THE JURY ON THE LEVEL OF INTENT AND THE
DEGREE OF RECKLESSNESS NECESSARY TO SUSTAIN A
CONVICTION FOR AGGRAVATED ASSAULT IN
PENNSYLVANIA.

The standard for analyzing claims of ineffective assistance of counsel under the

United States Constitution is set forth in a two-prong test by the Supreme Court in

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1986).  In order to gain relief

because his counsel was ineffective, Petitioner must show "(1) that counsel's

representation fell below an objective standard of reasonableness; and (2) that there is a

reasonable probability that, but for counsel's error, the result would have been different."

U.S. v. Kaufman, 109 F.2d 186, 190 (3d Cir. 1997), *citing*, Strickland.  Furthermore,

"[t]he defendant must overcome the presumption that, under the circumstances, the

challenged action 'might be considered sound trial strategy.' " Id. at 189.  The

"evaluation of counsel's performance is 'highly deferential' " and there must be every

effort made to "eliminate the distorting effects of hindsight, to reconstruct the

circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective a the time."  Reese v. Fulcomer, 946 F.2d 247, 253 (3d Cir. 1991),

*cert. denied*, 503 U.S. 988, 112 S.Ct. 1679 (1992).

Furthermore, "[i]n a state prisoner's habeas petition alleging ineffective

assistance of counsel, state court findings of fact made in the course of determining an

ineffectiveness claim are subject to the deference requirement of §2254(d), so long as

they are fairly supported by the record."  Berryman v. Morton, 100 F.3d 1089, 1094-95

(3d Cir. 1996).  Section 2254(e) provides that a state court's factual findings "shall be

presumed to be correct" and further provides that a habeas Petitioner "shall have the

burden of rebutting the presumption of correctness by clear and convincing evidence."

<u>Id.</u>

Federal habeas courts are required to give deference to state court rulings pursuant

to 28 U.S.C. §2254(d):

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a state court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in state court proceeding unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or an
>         unreasonable application of, clearly established Federal
>         law, as determined by the Supreme Court of the United
>         States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented
>         in the state court proceeding.

28 U.S.C. §2254(d).

The Third Circuit Court of Appeals, sitting *en banc,* has addressed this provision

in <u>Mattoe v. Superintendent, SCI Albion</u>, 171 F.3d 877 (3d Cir. 1999).  The AEDPA

requires a two-step analysis for section 2254(d)(1):

> … section 2254(d)(1) requires a two-step analysis.  First, the federal
> habeas court must determine whether the state court decision was
> "contrary to" Supreme Court precedent that governs the Petitioner's claim.
> Relief is appropriate only if Petitioner shows that "Supreme Court
> precedent requires an outcome contrary to that reached by the relevant
> state court." <u>O'Brien</u>, 145 F.3d at 24-25.  In the absence of such a
> showing, the federal habeas court must ask whether the state court
> decision represents an "unreasonable application of Supreme Court
> precedent": that is, whether the state court decision evaluated objectively
> and on the merits resulted in an outcome that cannot reasonably be
> justified.

<u>Id.</u> at 14.

Pursuant to <u>Matteo</u>, a federal habeas court must accept the state court's

determination that trial counsel's strategy was reasonable unless that determination unless

that ruling was contrary to, or unreasonably applied, United Sates Supreme Court

precedent.  This means that federal habeas relief cannot be granted merely because a

federal habeas court disagrees with the state court's ruling or that the federal court would

have reached a different result.

Petitioner raised this first issue of whether counsel was ineffective for failing to

object to the trial court's instructions regarding recklessness and the intent necessary to

commit aggravated assault in his PCRA petition and subsequent appeal.  The Superior

Court of Pennsylvania held as follows:

> Appellant also argues that counsel was ineffective
> in failing to request a jury instruction regarding
> recklessness as provided in Commonwealth v. O'Hanlon,
> 539 Pa. 478, 653 A.2d 616 (1995).  A review of the record
> reveals the prosecuting attorney requested an instruction
> pursuant to O'Hanlon; however, the trial court denied the
> request.  Appellant admits that the court utilized a charge
> comporting with the standard jury instruction.  Therefore,
> trial counsel cannot be found ineffective in failing to
> request an instruction that the trail court specifically
> refused to allow, and there is no arguable merit to
> Appellant's claim of ineffectiveness.

Commonwealth v. Dunlavey, 790 A.2d 337 (Pa.Super. 2001) (mem.).

To expand on this explanation, in O'Hanlon, the Pennsylvania Supreme Court

defined recklessness with respect to aggravated assault as conduct that is likely to cause a

life threatening injury.  O'Hanlon, 653 A.2d at 618.  The trial court defined recklessness

in accord with the statutory definition of recklessness as well as the standard jury

instruction.  Specifically, the trial court stated:

> one can be found guilty of aggravated assault, if one causes
> serious injury to another and does so intentionally,
> knowingly or does so recklessly under circumstances
> manifesting extreme indifference to the value of human
> life.
>        The statutory definition of recklessness is as
> follows: "A person acts recklessly with respect to a
> material element of an offense when he consciously
> disregards a substantial unjustified risk that the material
> element exists or will result from his conduct.  The risk
> must be of such a nature and degree, that considering the
> nature and intent of the actor's conduct and the
> circumstances known to him, its disregard involves a gross

> deviation from the standard of conduct that a reasonable
> person would observe in the actor's situation."

N.T. 11/14/95, pp. 106-07.

This instruction as a whole clearly expressed the definition of recklessness with respect to the crime of aggravated assault. Counsel was not ineffective for failing to object to this instruction as the general import of the instruction established the definition as provided in the O'Hanlon case. Furthermore, objecting to this instruction would have been fruitless as the instruction tracked the language of the relevant Pennsylvania standard jury instruction. In addition, the trial court read the statutory definition of the term recklessness, thereby providing the jury with the exact legal definition to be applied to the case.

Petitioner is unable to establish that there was a reasonable probability that, but for counsel's failure to object, the result of this trial would have been different. Even if Judge Clark's instructions did not convey the requirements of recklessness as required by Commonwealth v. O'Hanlon, 539 Pa. 478, 653 A.2d 616 (1995), Petitioner was not prejudiced by the error. First, trial counsel was aware that the prosecution had requested a specific O'Hanlon charge. The judge felt that he had covered recklessness to his satisfaction. Since the prosecution had already raised the suggestion of giving an instruction pursuant to O'Hanlon and been denied by the trial court, it would have been fruitless for counsel to raise the same objection.

In addition, the record contained sufficient evidence to find that Petitioner exercised the requisite degree of recklessness. Even if the judge had given a more specific instruction, the outcome of the trial would have been the same. Petitioner is required to show ". . . that there is a reasonable probability that, but for counsel's error, the result would have been different." U.S. v. Kaufman, 109 F.2d 186, 190 (3d Cir. 1997), citing, Strickland. Petitioner has not demonstrated either that his counsel's

objection would have produced the specific instruction; or, more importantly, that the specific instruction, if given, would have changed the outcome of the proceedings. Trial and appellate counsel were not ineffective for these reasons.

      B.  <u>TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO OBJECT TO THE TRIAL COURT'S INSTRUCTION REGARDING PROVOCATION, NOR WAS APPELLATE COUNSEL INEFFECTIVE FOR FAILING TO RAISE THIS ISSUE ON DIRECT APPEAL</u>.

This issue was addressed by the Pennsylvania Superior Court when the Petitioner appealed the denial of his PCRA petition. The Superior Court affirmed and allocatur was denied by the Pennsylvania Supreme Court. The Pennsylvania Superior Court held the following:

> Appellant's last allegation of ineffectiveness concerning jury instructions is that counsel should have objected to the court's charge regarding provocation. Counsel for Appellant states in his appellate brief that he is unable to cite any supporting case law for this argument and does not agree with the issue as framed by Appellant. Appellant's Brief, at 11. A review of the record reveals that the instruction given by the court was derived from 18 Pa.C.S.A. section 505 and was without error. N.T., 11/14/95, at 110-113. Therefore, there was no basis for counsel to object to the instruction, and there is no arguable merit to Appellant's claim of ineffectiveness in this respect.

<u>Commonwealth v. Dunlavey</u>, 790 A.2d 337 (Pa.Super. 2001) (mem.).

The decisions of the state courts were not contrary to clearly established Federal law as determined by the United States Supreme Court or based on an unreasonable determination of the facts presented in the state court proceedings. 28 U.S.C. Section 2254(d). Petitioner has not, and can not, establish that the Pennsylvania Superior Court's holding was contrary to United States Supreme Court precedent. Habeas corpus relief cannot, therefore, be granted with respect to this issue.

The defendant raised the issue of self-defense at trial. The court therefore instructed on self-defense, as follows:

The basic rule or definition of self defense is that the defendant is justified in using force against another person, if he reasonably believes he is in immediate danger of unlawful force form that person and reasonably believes it's necessary then and there to use the force which he does to protect himself.

\* \* \* \*

If a defendant employs what is known as non-deadly force to protect himself, the defendant must have been free from fault in provoking the difficulty, which led to his use of force.  It's his contention that this was an unjustified, unlawful attack on him.

There was testimony presented to you that throughout the evening he was pulling on this young lady's halter top or tank top or muscle shirt.  He was feeling her chest from time to time over her objections, causing her to move at least on three occasions.  Once again, it's up to you to determine which version you accept.  But in order to employ force against another, in a so-called self defense situation, the actor, the defendant, must be free from fault and provoking the difficulty which led to his use of force.  A defendant who is without fault in provoking a difficulty has no duty to retreat before using non-deadly force.  He may stand his ground, and only consider the possibility of retreating when estimating the danger to him and the necessity of using the force he employs.  He can take such measures as he feels are justified to protect himself.

N.T. 11/14/95, pp. 111-13.  Defendant's primary contention with respect to this issue is that the trial court should not have highlighted the above testimony during its charge because the court had dismissed the indecent assault charge on a demurrer and therefore defense counsel was ineffective for failing to object to this instruction.

The trial court properly instructed on self defense and therefore trial counsel was not ineffective for failing to object.  The instruction comported with the dictates of Pennsylvania's statute regarding self-defense.  See 18 Pa.C.S. §505.  It also comported with Pennsylvania's standard jury instructions.  The court's reiteration of Ms. Maschal's testimony regarding the Petitioner's provocation was completely appropriate to place this jury instruction in context with the facts of this case.  The court merely summarized Ms. Maschal's testimony and suggested nothing beyond her testimony.

In addition, the Petitioner is unable to establish that if his attorney had objected to this instruction the outcome of this case would have been different. Any objection to this instruction would likely have been overruled based on the fact that the instruction comported with the Pennsylvania statutes and standard jury instructions regarding self-defense. This claim is simply without merit and trial and appellate counsel were not ineffective for failing to raise or object to it.

C.    <u>TRIAL COUNSEL AND SUBSEQUENT COUNSEL WERE NOT INEFFECTIVE FOR FAILING TO INTRODUCE MEDICAL EVIDENCE OF INJURY TO PETITIONER'S EYE</u>.

This issue was addressed by the Pennsylvania Superior Court when the Petitioner appealed the denial of his PCRA petition. The Superior Court affirmed and allocatur was denied by the Pennsylvania Supreme Court. The Pennsylvania Superior Court held the following:

> Next, Appellant contends that counsel was ineffective in failing to introduce into evidence testimony concerning the injury to his eye. Prior to the altercation involved in the instant matter, Appellant suffered an injury that left him with only one eye. According to Appellant's version of the events, the victim in the present case struck Appellant's remaining eye, allegedly provoking the altercation. N.T., 9/19/00, at 27-30. Appellant claimed that his eye doctor, Dr. Harmon Stein, confirmed he suffered an injury to his remaining eye. <u>Id</u>. at 27-28. Appellant's wife worked for the eye doctor and testified at the PCRA hearing that she was the custodian of records for the office, but was not called by defense counsel to testify to the injury. <u>Id</u>. at 53-56. Appellant's wife also presented the damaged eyeglasses her husband was wearing on the day of the incident, but stated that, although defense counsel was aware she had them, he did not introduce them at trial. <u>Id</u>. at 51-52.
>
> At the previous hearing on July 2, 1996, it was established that Appellant's eye doctor did not wish to testify regarding any eye injury. N.T. 7/2/96, at 26-29. Further, trial counsel did not wish to call Appellant's wife as a witness in the case, as he wanted to avoid the introduction of other information damaging to the case. <u>Id</u>. at 30-31, 55; N.T., 9/19/00, at 30. Moreover, testimony

> was introduced at trial that the victim struck Appellant in
> the face; therefore, the medical testimony would merely
> have corroborated this version of events.  Accordingly, trial
> counsel cannot be found ineffective for pursuing a
> reasonable trial strategy, and Appellant has failed to
> establish that he was prejudiced by any such omission.

Commonwealth v. Dunlavey, 790 A.2d 337 (Pa.Super. 2001) (mem.).

The decisions of the state courts were not contrary to clearly established Federal law as determined by the United States Supreme Court or based on an unreasonable determination of the facts presented in the state court proceedings.  28 U.S.C. Section 2254(d).  Petitioner has not, and can not, establish that the Pennsylvania Superior Court's holding was contrary to United States Supreme Court precedent. Habeas corpus relief cannot, therefore, be granted with respect to this issue.

To expand on the Superior Court's opinion, the Petitioner must establish first that trial counsel's "representation fell below an objective standard of reasonableness."  U.S. v. Kaufman, 109 F.2d 186, 190 (3d Cir. 1997), *citing*, Strickland.  Trial counsel's representation was clearly reasonable in this case.  When asked why he did not call the Petitioner's eye doctor to testify, trial counsel stated that he had spoken with the eye doctor prior to trial and that the eye doctor expressed the following:

> . . . that he didn't want to testify.  That he did not ever
> indicate that he would be willing to testify.  That he
> wouldn't possibly help me by calling him.  That the report
> was such that the report would be better than his testimony.
> That his recollection of the injury was that it was slight, if
> noticeable.  . . . it was very obvious that he was going to be
> hostile and wasn't going to help us.

N.T. 7/2/96, p. 29.  Based on these assertions by the Petitioner's eye doctor, trial counsel made a reasonable strategic decision not to pursue calling the eye doctor as a witness.  If called, the eye doctor's testimony may have made it seem as though the defendant was exaggerating his eye injury since the eye doctor would testify that the injury was "slight, if noticeable."  This contradiction in the defendant's case could easily have led jurors to

disbelieve the defendant's testimony. Therefore, counsel made an informed reasonable

decision in the best interest of his client when he decided not to call the eye doctor as a

witness.

Likewise, trial counsel determined that it was in the Petitioner's best interest not

to call the Petitioner's wife as a witness to testify about the injury to his eye. Trial

counsel explained:

> I was concerned that calling Jodi as a witness would open
> her for cross-examination on other issues that had been
> minimized or avoided during the trial. And I made the
> tactical decision, I thought that she could testify as
> custodian oF records and get it in, but that by doing so, she
> would be subject to other cross-examination, that would
> hurt more than this record would help.

N.T. 7/2/96, p. 31. Trial counsel was specifically concerned that the prosecution might

bring out the Petitioner's <u>crimen</u> <u>falsi</u> and/or the fact that he was a member of the

Warlocks[1] if the Petitioner's wife were subject to cross-examination. Trial counsel

cannot be deemed ineffective for employing these reasonable trial strategies designed to

effectuate his client's best interest. <u>See</u> <u>Hess v. Mazurkiewicz</u>, 135 F.3d 905 (3d Cir.

1998).

Furthermore, the Petitioner is unable to establish that he was prejudiced by the

absence of this testimony. The medical testimony that the Petitioner contends should

have been introduced merely corroborates evidence that was already introduced at trial.

Several witnesses testified that the victim hit the Petitioner in his face causing him to

stagger back. The medical testimony would not have offered any additional evidence as

to Petitioner's justification in his reaction. The testimony presented at trial allowed the

Petitioner to argue that his eye was injured causing him temporary blindness. The

medical testimony would not have changed the outcome of this case and therefore, trial

and appellate counsel cannot be held to have provided ineffective assistance.

D.    TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO
INTRODUCE THE PETITIONER'S BROKEN GLASSES TO
SUPPORT HIS CLAIM OF SELF-DEFENSE OR LACK OF INTENT.

This issue was addressed by the Pennsylvania Superior Court on direct appeal and

allocatur was denied by the Pennsylvania Supreme Court.  The Superior Court held as

follows:

> Appellant next claims that trial counsel was
> ineffective for failing to introduce his broken glasses into
> evidence at trial when he was aware of their existence.  He
> claims that "[s]ince the Commonwealth's version of events
> was that [he]was slapped, the glasses would have served to
> rebut that contention as well as to boost the credibility of
> [his] statement to the police that he acted in self defense."
> Appellant's Brief at 23.  Initially, we note that, although
> some Commonwealth witnesses testified that the victim
> merely slapped Appellant, and the victim herself stated that
> she backhanded him, other witnesses testified that the
> victim punched the Appellant, as to the force of the impact
> staggering Appellant who was much larger than the victim,
> and the fact that his glasses were broken.  Moreover, even
> if this claim is of arguable merit, at the evidentiary hearing
> trial counsel testified that he did not want to introduce the
> glasses by putting Appellant or his wife on the stand
> because, as a matter of trial strategy, he wished to avoid
> other potentially prejudicial information being elicited from
> them on cross-examination.  See Commonwealth v.
> Collins, 519 Pa. 58, ___, 545 A.2d 882, 886 (1988) (trial
> counsel's decision as to matters of trial strategy cannot be
> the subject of an ineffectiveness claim).  In addition, as to
> the admission of the glasses via any Commonwealth
> witness, trial counsel testified that he knew Appellant and
> his wife were in possession of the glasses from the time of
> the accident until the time the case was ultimately tried.
> Thus, counsel inferred that the Commonwealth could attack
> the evidentiary value of the glasses.  Finally, the trial court
> specifically rejected the testimony of Appellant and his
> wife at the evidentiary hearing as incredible.  The court did
> not believe, therefore, the testimony of Appellant's wife
> that trial counsel informed her that he forgot to introduce
> the glasses as evidence.  Given these circumstances,
> Appellant has not established prejudice.

Commonwealth v. Dunlavey, 704 A.2d 690 (Pa.Super. 1997) (mem.).

---

[1] The Warlocks is a motorcycle gang notorious for engaging in criminal activity.

The decisions of the state courts were not contrary to clearly established Federal law as determined by the United States Supreme Court or based on an unreasonable determination of the facts presented in the state court proceedings. 28 U.S.C. Section 2254(d). Petitioner has not, and can not, establish that the Pennsylvania Superior Court's holding was contrary to United States Supreme Court precedent. Habeas corpus relief cannot, therefore, be granted with respect to this issue.

      E.      <u>TRIAL COUNSEL AND SUBSEQUENT COUNSEL WERE NOT INEFFECTIVE WHEN THEY FAILED TO RAISE THE ISSUE OF THE JUDGE'S INSTRUCTIONS REGARDING THE RE-READING OF TESTIMONY</u>.

This issue was addressed by the Pennsylvania Superior Court when the Petitioner appealed the denial of his PCRA petition. The Superior Court affirmed and allocatur was denied by the Pennsylvania Supreme Court. The Pennsylvania Superior Court held the following:

> First, we address Appellant's allegations of ineffectiveness concerning the court's instructions to the jury. When reviewing a challenge to a jury instruction, an appellate court must review the charge as a whole. <u>Commonwealth v. Spotz</u>, 563 Pa. 269, 759 A.2d 1280 (2000). An instruction will be upheld if it clearly, adequately, and accurately reflects the law. <u>Id.</u> The Standard Jury Instructions are not conclusive, but are merely a guide. <u>Commonwealth v. Clark</u>, 683 A.2d 901 (Pa.Super. 1996). Whether to request additional points for charge is one of the tactical decisions within the discretion of counsel, and trial counsel is not ineffective for failing to request an instruction as long as there is some reasonable basis for the attorney's decision. <u>Commonwealth v. Derk</u>, 553 Pa. 325, 719 A.2d 262 (1998).
>
> Appellant first contends the trial court erroneously instructed the jury that the court could not read back portions of the testimony to them once they had begun deliberations. Appellant argues that counsel was ineffective in failing to object to this instruction. In instructing the jury, the court stated as follows:
>
>> When you're back deliberating, if you have some problems with trying to recall the

> testimony, unfortunately, you're not
> permitted to come back to the courtroom and
> have the stenographer read it back to you or
> have me read to you from my notes
>
> N.T., 11/14/95, at 98-99.
>
>     It is within the trial court's discretion to deny the
> jury the ability to request that portions of testimony be re-
> read to them during deliberations.  <u>See</u> <u>Commonwealth v.</u>
> <u>Johnson</u>, 618 A.2d 415 (Pa.Super. 1992), *affirmed*, 538 Pa.
> 148, 646 A.2d 1170 (1994) (overruled on other grounds).
> "When a jury requests that recorded testimony be read to it
> to refresh its memory, it rests within the trial court's
> discretion to grant or deny such request."  <u>Id</u>. at 418 (citing
> <u>Commonwealth v. Bell</u>, 476 A.2d 439 (Pa.Super. 1984)).
> Here, the court merely advised the jury in advance that it
> would not honor any such requests.  Therefore, there is no
> arguable merit to this allegation, and counsel cannot be
> found ineffective in this regard.

<u>Commonwealth v. Dunlavey</u>, 790 A.2d 337 (Pa.Super. 2001) (mem.).

    The decisions of the state courts were not contrary to clearly established Federal law as determined by the United States Supreme Court or based on an unreasonable determination of the facts presented in the state court proceedings.  28 U.S.C. Section 2254(d).  Petitioner has not, and can not, establish that the Pennsylvania Superior Court's holding was contrary to United States Supreme Court precedent.  Habeas corpus relief cannot, therefore, be granted with respect to this issue.

F.    <u>TRIAL COUNSEL AND SUBSEQUENT COUNSEL WERE NOT INEFFECTIVE FOR FAILING TO INTRODUCE EVIDENCE OF THE VICTIM'S INTOXICATION THROUGH EXPERT TESTIMONY</u>.

This issue was addressed by the Pennsylvania Superior Court when the Petitioner appealed the denial of his PCRA petition.  The Superior Court affirmed and allocatur was denied by the Pennsylvania Supreme Court.  The Pennsylvania Superior Court held the following:

> Appellant's next allegation of ineffectiveness concerns the failure to introduce evidence of the victim's intoxication.  Appellant testified at the PCRA hearing that, after trial, he had the opportunity to review hospital records which showed the victim had ingested alcohol and various medications.  N.T., 9/19/00, at 41.  The report of the toxicologist, entered into evidence at the PCRA hearing, stated that the "high alcohol alone, and even more so in combination with other drugs, would have resulted in an individual that would have impaired judgment, and lack of inhibitions."  N.T., 9/19/00, Exhibit D-1.
>
> Appellant's trial counsel testified that, on July 2, 1996, at a post-sentence motion ineffectiveness hearing, it was discussed during trial whether an expert should be hired to review the medical records of the victim, but that a joint decision was made with Appellant to forego the expert due to the expense.  N.T., 7/2/96, at 40-44.  Appellant and his wife testified at the PCRA hearing that counsel never discussed financial concerns with them.
>
> The PCRA court found the proposed testimony irrelevant.  While drinking at a bar, Appellant attempted, on several occasions, to grope the victim against her will.  N.T., 11/14/95, at 11-12.  After the bartender at the establishment refused to serve any more alcohol to Appellant, he began to argue with the manager.  As Appellant was arguing with the bartender, the victim attempted to intervene, eventually slapping Appellant across the face.  Appellant then swung his motorcycle helmet at the victim and struck her in the head rendering her unconscious.  The PCRA court found that, under the circumstances of the case, whether the victim had consumed alcohol that evening was irrelevant.  PCRA Court Opinion, 1/9/01, at 2.  We find there is no error in the reasoning of the PCRA court, and that the PCRA court's findings are supported by the record.  <u>Vega</u>, <u>supra</u>.  Thus, there is no merit to this allegation of ineffectiveness.

<u>Commonwealth v. Dunlavey</u>, 790 A.2d 337 (Pa.Super. 2001) (mem.).

The decisions of the state courts were not contrary to clearly established Federal law as determined by the United States Supreme Court or based on an unreasonable determination of the facts presented in the state court proceedings. 28 U.S.C. Section 2254(d). Petitioner has not, and can not, establish that the Pennsylvania Superior Court's holding was contrary to United States Supreme Court precedent. Habeas corpus relief cannot, therefore, be granted with respect to this issue.

      G.    <u>TRIAL COUNSEL WAS NOT INEFFECTIVE FOR COUNSELING PETITIONER TO RELINQUISH HIS RIGHT TO TESTIFY ON HIS OWN BEHALF</u>.

This issue was addressed by the Pennsylvania Superior Court on direct appeal and allocatur was denied by the Pennsylvania Supreme Court. The Superior Court held as follows:

> Appellant next claims that trial counsel was ineffective for advising Appellant not to testify on his own behalf because trial counsel erred in believing Appellant could be cross-examined as to prior <u>crimen falsi</u> convictions. We find no merit to Appellant's claim. Trial counsel testified that he was concerned Appellant's prior conviction for conspiracy to intimidate a witness would be brought up by the Commonwealth should Appellant take the stand. This prior conviction, which is within the ten year window of <u>Commonwealth v. Randall</u>, 515 Pa. 410, 415, 528 A.2d 1326, 1329 (1987), and also included a conviction for conspiracy to maliciously damage a building by means of fire, involved an instance where Appellant and another individual, in response to being "flagged" from a bar participated in a plan to burn the bar down. While fighting the blaze, a firefighter lost his life. Understandably, trial counsel did not want these facts to come out at trial, especially where the Commonwealth in the instant case had presented testimony that Appellant had attempted to influence a witness from testifying, <u>see</u> <u>infra</u>. Contrary to Appellant's claim, we conclude that such a conviction is arguably for a crime involving <u>crimen falsi</u>. See <u>Harmon v. Commonwealth</u>, 119 Pa.Commonw.Ct. 1, __, 546 A.2d 726, 730 (1988), <u>alloc. den.</u>, 523 Pa. 643, 565

A.2d 1168 (1989) (conviction for bribery is a <u>crimen</u> <u>falsi</u> crime). In addition, and contrary to Appellant's belief, the fact that Appellant's prior convictions for the <u>crimen</u> <u>falsi</u> crimes of burglary, larceny, and receiving stolen property are outside the ten year window of <u>Randall</u>, does not mean that the convictions could not, under any circumstances, be used by the Commonwealth for impeachment purposes. <u>See</u> <u>Commonwealth v. Brown</u>, 449 Pa.Super. 346, __, 673 A.2d 975, __, <u>alloc</u>. <u>den</u>., 545 PA. 675, 682 A.2d 306 (1886) (<u>quoting</u> <u>Randall</u>, 528 A.2d at 1329) ("If period of greater than ten years has expired, presiding judge must determine whether value of evidence substantially outweighs prejudicial effect)."

Even if trial counsel may have been in error with regard to the advice given Appellant regarding his prior convictions, we cannot conclude that Appellant was prejudiced by counsel's advice since trial counsel also provided additional reasons why he advised Appellant not to take the stand. As a matter of trial strategy, counsel was aware that Appellant's statement had already been read into evidence during the Commonwealth's case-in-chief. Thus, counsel was of the opinion that Appellant's version of what occurred was before for [sic] the jury without providing the Commonwealth an opportunity to cross-examine on the statements contained therein. Thus, counsel cannot be found to be ineffective. <u>Collins</u>, <u>supra</u>.

<u>Commonwealth v. Dunlavey</u>, 704 A.2d 690 (Pa.Super. 1997) (mem.).

The decisions of the state courts were not contrary to clearly established Federal law as determined by the United States Supreme Court or based on an unreasonable determination of the facts presented in the state court proceedings. 28 U.S.C. Section 2254(d). Petitioner has not, and can not, establish that the Pennsylvania Superior Court's holding was contrary to United States Supreme Court precedent. Habeas corpus relief cannot, therefore, be granted with respect to this issue.

H.    TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO OBJECT TO THE TRIAL COURT'S GROSS MISREPRESENTATION OF THE DEFENDANT'S STATEMENT TO THE POLICE.

This issue was addressed by the Pennsylvania Superior Court on direct appeal and allocatur was denied by the Pennsylvania Supreme Court. The Superior Court held as follows:

> Appellant's first claim concerns the counsel's failure to object to what he alleges was a critical misstatement by the trial court in its instructions to the jury regarding the hand-written statement he had given to the police. As noted above, this statement, in its entirety, was read to the jury. As written by Appellant, it included the following cryptic passage: "I WAS SCARED THAT SHE WOULD ATTACK ME AGAIN AS BEFOR[E] I COULD SEE CLEARLY AGAIN. SO I SWUNG AT HER WITH MY HELMET ONE TIME ONLY." In summarizing this evidence, the trial court stated: "He said amongst other things that he was scared that she would attack me again as before. I could see clearly again, so I swung at her with my helmet, one time only." N.T., 11/14/96, at 109.
>
> We find Appellant's claim entitles him to no relief. Although we agree with Appellant that the trial court should avoid material misstatements with regard to the evidence, Commonwealth v. Pelzer, 531 Pa. 235, __, 612 A.2d 407, 413 (1992) (it is within trial court's province to summarize evidence, so long as court makes no material misstatements), no such material misstatement was made in the present case. When the statement is read in its entirety, it does appear that Appellant was stating that, once he could see clearly, he swung at the victim. As Appellant did not testify at trial, no other explanation was provided for the statement. Moreover, even if the trial court did misconstrue this statement, Appellant has not demonstrated prejudice. In the present case, the trial court specifically instructed the jury that "You and you alone will determine what the facts are in this case . . . I do not tell you what the facts are." N.T., 11/14/96, at 98. Additionally, the record indicates that Appellant's statement was given to the jury during its deliberations. Thus, the jury had ample opportunity to review the exact statement. Appellant's claim that the jury would assign more weight to the trial court's reiteration of a portion of the statement, rather than the whole statement as read to them and possessed by them during deliberations, is no more than speculation.

Commonwealth v. Dunlavey, 704 A.2d 690 (Pa.Super. 1997) (mem.).

The decisions of the state courts were not contrary to clearly established Federal law as determined by the United States Supreme Court or based on an unreasonable determination of the facts presented in the state court proceedings. 28 U.S.C. Section 2254(d). Petitioner has not, and can not, establish that the Pennsylvania Superior Court's holding was contrary to United States Supreme Court precedent. Habeas corpus relief cannot, therefore, be granted with respect to this issue.

I.    TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO ARGUE RELEVANT POINTS OF LAW IN HIS CLOSING ARGUMENT.

The Petitioner argues that counsel neglected to make various arguments during his closing argument including: the failure to argue that the prosecution had not shown sufficient evidence of provocation or that the level of intent and of recklessness had not been proven and the failure to argue the fact that the charge of indecent assault had been dismissed by the trial court. Petitioner also claims that trial counsel was ineffective when he argued an incorrect legal standard regarding Petitioner's intent to commit aggravated assault.

This last claim may not be addressed on the merits as it is either unexhausted or procedurally defaulted. In order for Petitioner to be entitled to relief under his present petition, he must demonstrate that he has exhausted all remedies available to him in the courts of the Commonwealth of Pennsylvania. 28 U.S.C. Section 2254(b)(1). In O'Sullivan v. Boerckel, 526 U.S. 838, 840 (1999), the Supreme Court held that while exhaustion does not demand that state prisoners "invoke extraordinary remedies, state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review

process." Id. at 844-45. This means, the Court explained, that state prisoners must "file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." Id. at 847.

The Court further noted that, in determining whether a state prisoner has preserved an issue for presentation in a federal habeas petition, "we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts." Id. at 848. If a claim has not been fairly presented to the state courts but further state-court review is clearly foreclosed under state law, the claim will not be deemed exhausted, but rather procedurally defaulted. Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); See also, Toulson v. Beyer, 987 F.2d 984, 987-88 (3d Cir. 1993). The "fairly presented" requirement requires that the prisoner present his federal habeas claims at all levels of state court adjudication. Cristin v. Brennan, 281 F.3d 404 (3d Cir. 2002).

If the claim has not been properly exhausted in the state court system, it may be entertained in a federal habeas petition only if there is a basis for excusing the procedural default. Procedural default may only be excused if a Petitioner can show "cause" and "prejudice" or that a "fundamental miscarriage of justice" would result from not excusing the default. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); See also Wenger v. Frank, 266 F.3d 218 (3d Cir. 2001). A federal claim is procedurally defaulted, and federal habeas review of the claim is barred, if the state court of last resort refuses to consider its merits, if such refusal is pursuant to an independent and adequate state procedural rule. Holloway v. Horn, 161 F.Supp.2d 452, 455 (3rd Cir. 2001).

Petitioner failed to previously raise this last ground of relief. This claim was not raised in Petitioner's direct appeal nor in Petitioner's Post Conviction Relief Act petition and appeal thereto. Both the United States Supreme Court and courts of the Third Circuit have stated that for an application for discretionary review, a habeas Petitioner is required

to demonstrate that he has exhausted all available state remedies.  O'Sullivan, 526 U.S. 838, 863 (1999); See also Mattis v. Vaughn, 128 F.Supp.2d 249 (E.D. Pa. 2001).  If Petitioner were to seek review of this final issue by filing a subsequent PCRA petition, this petition would be dismissed based on the PCRA's time restrictions.  Therefore, this claim would be procedurally defaulted.  Because Petitioner has failed to show that he has exhausted all available state remedies and "cause" and "prejudice" or that a "fundamental miscarriage of justice" would result from not excusing the default, this court should deny Petitioner relief.

J.    <u>CONCLUSION</u>

Wherefore, it is respectfully requested that Petitioner's Petition for Habeas Corpus Relief be denied and dismissed.


Respectfully submitted,


Scott A. MacNair
Assistant District Attorney