**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JAMES DUNLAVEY,          :
     Petitioner       :
                :  CIVIL
                :  NO. 02-3734
     v.           :
COURT OF COMMON PLEAS AND  :
PROBATION OFFICE OF BUCKS COUNTY, et al., :
     Respondents     :

**Memorandum and Order**

YOHN, J.                   July _____, 2004

   Presently before this court is James Dunlavey's Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254.  United States Magistrate Judge Carol Sandra Moore Wells filed a

Report and Recommendation (Report & Recommendation") (Doc. #10) recommending denial of

the petition.  Petitioner filed objections to the Report & Recommendation ("Objections") (Doc.

#13).  For the following reasons, petitioner's objections will be overruled, this court will adopt

the Report & Recommendation as supplemented herein, and the petition will be denied.

**I. BACKGROUND**[1]

   On November 14, 1995, following a jury trial in the Bucks County Court of Common

Pleas before the Honorable Ward F. Clark, petitioner James Dunlavey was convicted of

---

[1]The facts set forth in this section have been taken from the state court record and the documents submitted by petitioner in support of his petition for writ of habeas corpus.  *See* Superior Court Opinion, 8/19/1997 (attached to Respondent's Answer to Pet. for Writ of Habeas Corpus, Doc. #4, as Exhibit A); PCRA Court Op. 01/09/01; Superior Court PCRA Opinion, 10/26/2001 (attached to Respondent's Answer to Pet. for Writ of Habeas Corpus, Doc. #4, as Exhibit B); *see also* Pet. Writ Habeas Corpus (Doc. #1); Pet.'s Reply & Traverse to Resp.'s Answer (Doc. #7); Pet.'s Traverse to Report & Recommendation ("Objections") (Doc #13); Rebuttal to Resp.'s Answer (Doc. #16).

aggravated assault, simple assault, recklessly endangering another person, and disorderly

conduct.[2]  On January 4, 1996, Dunlavey was sentenced to 7-20 years imprisonment.[3]

Petitioner filed a timely direct appeal in the Superior Court of Pennsylvania, in which he

raised six issues:

> 1.) Was the jury's verdict against the weight and sufficiency of the evidence, particularly since the Commonwealth failed to negate self defense or to prove that Dunlavey acted with the requisite intent?
> 2.) Was trial counsel constitutionally ineffective?[4]
> 3.) Did the prosecutor's remarks concerning the Warlocks Motorcycle Club ("WMC") deny Dunlavey a fair trial?
> 4.) Did the trial court err in admitting testimony relating to the WMC?
> 5.) Were the trial court's instructions regarding provocation and self defense in error?
> 6.) Did the trial court err in refusing to charge the jury on recklessness in accordance with *O'Hanlon*, 539 Pa. 478 (1995)?

The Superior Court– in an 18-page opinion affirming the judgment of conviction– addressed

_____

[2]The facts underlying petitioner's conviction are set forth in detail in the Superior Court of Pennsylvania's opinion dated August 19, 1997.  For the purposes of this memorandum, it is sufficient to note that petitioner's conviction was based upon the events which took place at T's Sport's Bar in Croydon, Pennsylvania, on the night of May 1, 1995, when a confrontation took place between petitioner and Katie Maschal, the victim.  The altercation ended when petitioner swung a motorcycle helmet at the victim's head, striking her on the side of the head and causing serious skull fractures.

[3]Petitioner's sentence was vacated on January 23, 1996.  On February 26, 1996, however– after a hearing– Judge Clark re-imposed the same 7-20 year sentence.

[4]Petitioner alleged eight specific ways in which trial counsel's actions constituted ineffective assistance of counsel: (1) failure to object to trial court's gross misrepresentation of the defendant's statement to the police; (2) failure to introduce physical evidence in support of self defense and lack of intent; (3) failure to present testimony of an investigator to rebut or impeach state witnesses' testimony; (4) failure to investigate and present evidence of victim's mental health; (5) advising petitioner not to testify due to potential cross-examination regarding his prior convictions; (6) failure to ensure that stenographic records of the opening and closing arguments were kept; (7) failure to object to the prosecutor's reference to alleged threats made by the Warlocks Motorcycle Club; and (8) failure to argue relevant points of law and fact during closing argument.  *See* Table of Contents of Petitioner's Br. on Appeal to the Superior Court, 11/15/1996 (attached to Objections (Doc. #13) as Exhibit A-1).

each of petitioner's claims. *See* Superior Court Opinion, 8/19/1997 (attached to Respondent's

Answer to Pet. for Writ of Habeas Corpus, Doc. #4, as Exhibit A) [hereinafter "Super. Ct. Op.

8/19/97"]. On March 9, 1998, the Pennsylvania Supreme Court denied Dunlavey's petition for

allowance to appeal, *see Com. v. Dunlavey*, 716 A.2d 1247 (Pa. 1998), in which he had raised the

same six issues as he had before the Superior Court. *See* Table of Contents of Petitioner's Pet.

for Allowance of Appeal (attached to Objections (Doc. #13) as Exhibit B-1).

On October 2, 1998, Petitioner filed a timely[5] pro se petition for collateral relief pursuant

to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541, *et seq.*, which

was denied by the PCRA court on November 4, 1998.[6] On appeal, the Superior Court vacated

and remanded for the appointment of counsel. *Com. v. Dunlavey*, 750 A.2d 367 (Pa. Super.

1999) (unpub. mem.). Following an evidentiary hearing– at which petitioner was represented by

counsel– the PCRA court denied relief.[7] PCRA Court Op. 01/09/01 (unpub. mem.).

---

[5]Any petition for post-conviction relief must be filed within one year of the date on which
the petitioner's conviction becomes final. *See* 42 Pa. Cons. Stat. Ann. § 9545(b)(1). A judgment
of conviction becomes final, for the purposes of post-conviction relief, "at the conclusion of
direct review, including discretionary review in the Supreme Court of the United States and the
Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Id.* §
9545(b)(3).
    The Supreme Court of Pennsylvania denied *allocatur* on March 9, 1998. Petitioner's
judgment of conviction became final on June 7, 1998, therefore, upon expiration of his time to
seek direct review in the United States Supreme Court by writ of *certiorari* (90 days). The one-
year statute of limitations applicable to any post-conviction relief sought by petitioner thus began
to run on June 8, 1998. Petitioner's PCRA petition dated October 2, 1998, falls well within the
one-year statute of limitations and was therefore timely.

[6]The PCRA Court also denied Dunlavey's request to supplement his petition on
December 5, 1998.

[7]During the evidentiary hearing, both Dunlavey and his wife testified. Additionally,
petitioner submitted an expert report prepared by a toxicologist. *See* Superior Court PCRA
Opinion, 10/26/2001 at 2 (attached to Respondent's Answer to Pet. for Writ of Habeas Corpus,

Petitioner filed a timely appeal in the Superior Court of Pennsylvania, alleging that his prior counsel was constitutionally ineffective.[8]  After addressing each of petitioner's arguments, the Superior Court affirmed the PCRA's court's denial of relief on October 26, 2001.  Super. Ct. PCRA Op. 10/26/01.  The Pennsylvania Supreme Court denied *allocatur* on April 17, 2002, and Petitioner filed the instant §2254 petition on June 12, 2002.

In his habeas petition, Dunlavey asserts nine grounds on which he believes he is entitled to relief, each of which sounds in ineffective assistance of counsel:

1.) trial and appellate counsel were ineffective for failing to raise the issue of trial court's failure to instruct the jury regarding the level of intent and the degree of recklessness necessary to sustain a conviction for aggravated assault;
2.) trial and appellate counsel were ineffective due to their failure to object to the trial court's jury instruction relating to provocation;
3.) trial and appellate counsel were ineffective for failing to introduce medical evidence of injury to petitioner's "only eye;"
4.) trial counsel was ineffective because he failed to introduce evidence of petitioner's broken glasses in support of his self defense and lack of intent claims;
5.) trial and appellate counsel were ineffective for their failure to object to the trial court's instructions regarding the re-reading of testimony;
6.) trial and appellate counsel were ineffective for failing to introduce evidence of the victim's intoxication at the time of the incident;
7.) trial counsel was ineffective for advising petitioner not to testify on his own behalf;
8.) trial counsel was ineffective for his failure to object to the court's "gross misinterpretation" of the defendant's statement to the police; and
9.) trial counsel was ineffective for failing to argue relevant points of law during his closing argument.

---

Doc. #4, as Exhibit B) [hereinafter "Super. Ct. PCRA Op. 10/26/01"].

[8]Petitioner raised seven grounds for his ineffectiveness claim: (1) counsel's failure to challenge the court's jury instructions concerning whether testimony could be re-read to the jury during deliberations; (2) counsel's failure to challenge the court's refusal of a particular charge on recklessness; (3) counsel's failure to challenge the court's error in the charge regarding provocation; (4) counsel's failure to introduce evidence of the victim's intoxication; (5) counsel's failure to introduce evidence of the injury to Dunlavey's eye; (6) counsel's failure to object to the victim impact statement; and (7) counsel's failure to discover and introduce evidence, including after-discovered evidence.  *See* Super. Ct. PCRA Op. 10/26/01 at 3.

*See* Pet. Writ of Habeas Corpus (Doc. #1).

## II. STANDARD OF REVIEW

Where a habeas petition has been referred to a Magistrate Judge for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), this court's review of "those portions of

the report or specified proposed findings or recommendations to which objection is made" is *de*

*novo*. *Id.* at § 636(b).

## III. TIMELINESS

Dunlavey's petition is governed by the Antiterrorism and Effective Death Penalty Act of

1996[9] ("AEDPA"), P.L. 104-132, 110 Stat. 1214.  Under the AEDPA, a state prisoner seeking

federal habeas relief must file his habeas petition within one year of the date on which his

judgment of conviction becomes final.  28 U.S.C. § 2244(d)(1).  Because petitioner's habeas

petition was filed prior to the expiration of the one year statute of limitations,[10] it is timely under

§2244(d)(1).

## IV. EXHAUSTION AND PROCEDURAL DEFAULT

Federal habeas relief pursuant to 28 U.S.C. § 2254 is available to a state prisoner only

where he has exhausted his remedies in state court; "[i]n other words, the state prisoner must

---

[9]The AEDPA governs §2254 habeas petitions filed on or after April 24, 1996.  *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997).

[10]Petitioner's conviction became final on June 7, 1998, *see supra* note 5, when his time to seek allowance of appeal in the United States Supreme Court expired.  The one year statute of limitations began to run on June 8, 1998, and continued running until petitioner filed his PCRA petition on October 2, 1998, at which time 116 days had elapsed.  Petitioner's statute of limitations was then tolled until April 17, 2002, during the pendency of his state collateral attack. *See* 28 U.S.C. § 2244(d)(2).  Between April 17, 2002, and June 12, 2002– when petitioner filed the instant habeas petition– approximately 56 days elapsed.  The instant habeas petition is, therefore, timely under the AEDPA's one-year statute of limitations.

give the state courts an opportunity to act on his claims before he presents those claims to a

federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C.

§ 2254(b)(1)(A). This exhaustion rule requires petitioner to "fairly present" each of his federal

claims to the state courts. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) (citing

cases). To "fairly present" a claim, petitioner must present its "factual and legal substance to the

state courts in a manner that puts them on notice that a federal claim is being asserted." *Id.* at

261 (citations omitted). While petitioner need not cite "book and verse" of the federal

constitution, *Picard v. Connor*, 404 U.S. 270, 277 (1971), he must "give the State 'the

opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before

presenting those claims to this court. *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting

*Picard*, 404 U.S. at 275).

The Report & Recommendation found that petitioner's first eight claims have been

properly exhausted and should be addressed on their merits. *See* Report & Recommendation at

9. With respect to petitioner's ninth claim, however– that trial counsel was ineffective for failing

to argue relevant points of law during his closing argument– the Report & Recommendation

found this claim to have been procedurally defaulted and therefore recommended dismissal.

According to the Report & Recommendation, "[p]etitioner never properly raised this claim in

state court, thus, it is unexhausted." *Id.* at 7. Respondent espouses this position in its Answer as

well, asserting that "[t]his claim was not raised in Petitioner's direct appeal nor in Petitioner's

[PCRA] petition and appeal thereto." Second Answer (Doc. #15) at 23.

As petitioner correctly points out in his objections, however, this issue was raised on both

direct appeal to the Pennsylvania Superior Court <u>and</u> to the Pennsylvania Supreme Court in the

6

petition for *allocatur*. Objections at 6. It is evident from the briefs submitted by petitioner on

direct appeal and in support of his petition for discretionary review that he raised the issue of

counsel's alleged failure to argue relevant points of fact and law during closing argument. *See*

Exhibit A-1 to Objections ("Trial counsel was ineffective for failing to argue relevant points of

law and fact during closing argument"); Exhibit B-1 to Objections ("The Superior Court erred in

not finding that trial counsel was ineffective for failing to argue relevant points of law and fact in

the closing argument.") Moreover, the Superior Court of Pennsylvania specifically

acknowledged– and addressed– this issue in its August 19, 1997 opinion. *See* Super. Ct. Op.

8/19/1997 at 14 ("As to Appellant's claim that counsel failed to argue relevant points of fact, our

review is hampered by Appellant's failure on appeal to either request transcription of the

arguments or otherwise reconstruct the record. Moreover, our review of trial counsel's

recollection regarding his closing argument to the jury indicates the 'chosen course [had some

reasonable basis] designed to effectuate [Appellant's] interests.") (emphasis in original).

Petitioner's ninth claim, therefore, is exhausted[11] and has not been procedurally defaulted. While

the Superior Court's analysis may have been brief, it nonetheless addressed the merits of

petitioner's claim and determined that trial counsel's closing argument was reasonably designed

to further the interests of his client.[12] The state courts have had an opportunity to review

---

[11]While Petitioner did not raise this issue in his PCRA appeal, for the purposes of
exhaustion "a petitioner who has raised the claim on direct appeal need not raise it again in a
state post-conviction proceeding." *Evans v. Ct. of Common Pleas, Del. Cty., Pa.*, 959 F.2d 1227,
1230 (3d Cir. 1992) (quoting *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984)).

[12]Even if the Superior Court had not addressed the merits of petitioner's ninth
ineffectiveness claim, "to satisfy the exhaustion requirement, a defendant only need have given
the state courts the opportunity to pass on the merits of a claim." *Hameen v. Delaware*, 212 F.3d
226, 247 (3d Cir. 2000) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Because Petitioner

petitioner's ninth claim, thus furthering the principles underlying 28 U.S.C. § 2254. *See*

*O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999) ("Comity thus dictates that when a prisoner

alleges that his continued confinement for a state court conviction violates federal law, the state

courts should have the first opportunity to review this claim and provide any necessary relief.

This rule of comity reduces friction between the state and federal court systems by avoiding the

'unseem[liness]' of a federal district court's overturning a state court conviction without the state

courts having had an opportunity to correct the constitutional violation in the first instance.")

(citations omitted).

## V.  AEDPA STANDARDS

Section 2254 allows federal courts to grant habeas corpus relief to a prisoner "in custody

pursuant to the judgment of a State court" where his custody violates the Constitution of the

United States of America.  28 U.S.C. § 2254(a).  Under the AEDPA, petitioner is entitled to

habeas relief only where the state court proceedings "resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established Federal law," or "resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. § 2254(d)(1).

A state court decision may be "contrary to" clearly established federal law in one of two

ways.  First, a state court decision is contrary to clearly established precedent where "the state

court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000).  Second, a state court decision will be "contrary

---

presented this claim to the Superior Court and to the Supreme Court, his ninth claim is
exhausted.

to" the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the] precedent." *Id.* at 406. A state court decision involves an "unreasonable application" of federal law, on the other hand, where it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08.

Habeas relief will also be granted where a state court decision is "based on an unreasonable determination of the facts." Under the AEDPA, however, factual determinations made by the state court are accorded a presumption of correctness: "a federal court must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." *Stevens v. Del. Correctional Ctr.*, 295 F.3d 361, 368 (3d Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)). To prevail under this "unreasonable determination" prong, therefore, petitioner must demonstrate that the state court's determination of the facts was objectively unreasonable in light of the evidence available; mere disagreement with the state court– or even a showing of erroneous factfinding by the state court– will be insufficient to warrant relief, provided that the state court acted reasonably. *See Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. at 409); *Torres v. Prunty*, 223 F.3d 1103, 1007-08 (9th Cir. 2000) (citing same).

## VI. LEGAL STANDARD

Petitioner objects to the Report & Recommendation with respect to all nine claims, each of which arises from a determination as to the effectiveness of petitioner's counsel. The applicable "clearly established federal law," therefore, is the well-settled two-prong test

9

established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under

*Strickland*, in order to merit habeas relief based on a claim of ineffectiveness of counsel

petitioner must demonstrate that: (1) his attorney's performance was deficient, and (2) he was

prejudiced by this deficiency. *Strickland*, 466 U.S. at 687.

      To demonstrate deficiency, petitioner must establish that counsel's performance "fell

below an objective standard of reasonableness." *Id.* at 688. To overcome the presumption that

counsel was effective, petitioner bears the burden of establishing that counsel's performance was

unreasonable under "prevailing professional norms." *Id.* at 688; *see also Buehl v. Vaughn*, 166

F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 689) ("In evaluating counsel's

performance, we are 'highly deferential' and 'indulge a strong presumption' that, under the

circumstances, counsel's challenged actions 'might be considered sound...strategy."). To

demonstrate prejudice, petitioner must demonstrate that "counsel's errors were so serious as to

deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

Ultimately, the "benchmark for judging any claim of ineffectiveness must be whether counsel's

conduct so undermined the proper functioning of the adversarial process that the trial cannot be

relied on as having produced a just result." *Id.*

## VII. "CONTRARY TO" ANALYSIS

      Each of petitioner's nine habeas claims raises the issue of his counsel's effectiveness.

The relevant "clearly established" federal precedent for an ineffectiveness claim is *Strickland*.

The question before this court, therefore, is whether the Superior Court's decision was "contrary

to" the *Strickland* standard, involved "an unreasonable application" of *Strickland*, or "resulted in

a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1).

The Pennsylvania Supreme Court has articulated an ineffective assistance standard, upon which the Superior Court relied in this case, *see* Super. Ct. PCRA Op. 10/26/01 at 3-4, which requires petitioner to demonstrate that (1) the underlying claim is of arguable merit, (2) counsel had no reasonable basis for the act or omission in question, and (3) there exists a reasonable probability that, but for counsel's act or omission, the outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 312, 724 A.2d 326 (1999). Both the Third Circuit and the Pennsylvania Supreme Court have held that this standard is materially identical to that set forth in *Strickland*. *See Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000) (finding that the Pennsylvania standard is "not contrary to" the *Strickland* test); *Commonwealth v. Pierce*, 515 Pa. 153, 161, 527 A.2d 973 (1987) (holding that Pennsylvania's ineffectiveness standard and the *Strickland* test "constitute the same rule"). Given that the Superior Court applied the correct standard at the outset– and to each of petitioner's claims– "contrary to" analysis is not the appropriate lens through which to view Dunlavey's habeas petition. Instead, this court's inquiry must focus on whether the Superior Court's decision involved "an unreasonable application" of *Strickland* or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1).

## VIII.  DISCUSSION

A.    The trial court's jury instruction relating to the level of intent and degree of recklessness necessary to sustain a conviction for aggravated assault.

Petitioner asserts that his trial counsel was ineffective for his failure to object to the trial court's refusal to instruct the jury on the level of intent and the degree of recklessness allegedly required to sustain a conviction for aggravated assault under Pennsylvania law.  The Superior Court of Pennsylvania reviewed this claim on PCRA appeal and affirmed the trial court's judgment on the merits.[13]

With respect to this first claim, petitioner does not allege that the Pennsylvania courts have made an unreasonable factual determination, nor does he present clear and convincing evidence to support such a claim.  Analysis under the "unreasonable factual determination" prong of section 2254(D)(1), therefore, is not appropriate.  Rather, petitioner's contention appears to be that the Superior Court's analysis was an unreasonable application of the law of ineffective assistance.  Ultimately, petitioner claims that the Superior Court should have found trial counsel's failure to request an instruction pursuant to *Commonwealth v. O'Hanlon* to constitute deficient performance because it enabled the jury to find him guilty of aggravated assault without requiring a finding of a heightened level of recklessness.

This court's inquiry, therefore, is "whether the Pennsylvania courts' application of *Strickland* to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under *Strickland*."  *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000).

---

[13]Petitioner also raised this issue on direct appeal as trial court error, however the court did not reach the merits of the claim. *See* Super. Ct. Op. 8/19/1997 at 18 ("Although present counsel finds fault in the trial court's jury instructions regarding self-defense and 'recklessness' as that term has been defined in the context of aggravated assault charge, no objections were lodged by trial counsel with regard to these claims, and Appellant has not alleged trial counsel's ineffectiveness in failing to do so.  Thus, these claims are not properly before this Court.")

Before turning to the Superior Court's analysis of this first claim, it seems worthwhile to review the holding of the *O'Hanlon* Court which forms the legal backdrop against which the trial court's jury instruction must be measured.

Under Pennsylvania law, a person commits aggravated assault where he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. Cons. Stat. Ann. § 2702(a)(1). It is the phrase "recklessly under circumstances manifesting extreme indifference to the value of human life" which concerns the court today.

Pennsylvania's statutory definition of recklessness states that an individual "acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 18 Pa. Cons. Stat. Ann. § 302(b)(3). In *Commonwealth v. O'Hanlon*, 653 A.2d 616 (Pa. 1995), however, the Pennsylvania Supreme Court held that a higher degree of recklessness is required– under section 2702(a)(1)– to support a conviction for aggravated assault:

> [M]ere recklessness is insufficient to support a conviction for aggravated assault, which requires a higher degree of culpability, i.e., that which considers and then disregards the threat <u>necessarily</u> posed to human life by the offending conduct. There must be an element of deliberation or conscious disregard of danger not present to the same extent in, e.g., either reckless endangerment, to which appellant admits, or driving while intoxicated.
>
> [F]or the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that

injury or death will ensue.  The recklessness must, therefore, be such that life threatening injury is essentially certain to occur.  This state of mind is, accordingly, equivalent to that which seeks to cause injury....Aggravated assault is, indeed, the functional equivalent of a murder in which, for some reason, death fails to occur.

*O'Hanlon*, 653 A.2d at 618.  In *O'Hanlon*, the driver ran a red light while driving drunk and hit another vehicle, seriously injuring the other driver.  The Pennsylvania Supreme Court found that defendant's behavior, "while worthy of criminal penalty,"did not rise to the level of aggravated assault because defendant lacked the requisite mens rea.  *Id.*

O'Hanlon*, therefore, stands for the proposition that "mere recklessness," as defined by section 302(b)(3), is insufficient to support an aggravated assault conviction.  *See also Orban v. Vaughn*, 123 F.3d 727, 732 (3d Cir. 1997) (recognizing that *O'Hanlon* "sets forth the degree of recklessness required to support an aggravated assault conviction under Pennsylvania law").  When charging the jury following Dunlavey's trial, however, the trial court did not define the recklessness requirement in accordance with *O'Hanlon* but, rather, relied upon the § 302(b)(3) definition of recklessness:

> Now the first charge of aggravated assault, I think everybody concedes in this case this young lady was hit on the side of the head with either that motorcycle helmet or one similar to it.  That is for your determination.  And you heard testimony concerning the fact that she was in the hospital for a number of days and heard the testimony of the neurosurgeon concerning what surgical procedures were needed to be done, as I understand it, but that's for your understanding, in effect to save her life.

> And then you have been provided with testimony concerning what the effects are from all of that she has sustained.  What she is sustaining today in terms of residual damage to her as a result of having been struck by a motorcycle helmet.  So while I think it's conceded that she was indeed struck by a motorcycle helmet, your responsibility has to be to determine whether or not that was an accident or whether it was justified or whether it was intentionally, knowingly done to her in an effort to injure her.

> Aggravated assault is defined in the criminal law of Pennsylvania as follows: A person is guilty of aggravated assault, if he attempts to cause serious bodily injury to

14

another or causes serious bodily injury to another intentionally, knowingly or recklessly, under circumstances manifesting extreme indifference to the value of human life.

So there are different facets to this crime. One can be found guilty of aggravated assault, if one attempts to cause serious bodily injury to another. And one can be found guilty of aggravated assault, if one causes serious injury to another and does so intentionally, knowingly or does so recklessly under circumstances manifesting extreme indifference to the value of human life.

The statutory definition of recklessness is as follows: "A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial unjustified risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree, that considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

Transcript 11/14/95 at 105-07 (attached to Doc. #4 as Ex. C). The trial judge then went on to define "serious bodily injury" in the context of the aggravated assault statute. He did not, however, further define recklessness.

The trial court's instruction should have been more specific in light of the Pennsylvania Supreme Court's holding in *O'Hanlon*. In fact, the trial court's instruction appears to have been legally incomplete in view of the then-recent Pennsylvania Supreme Court holding. This court's inquiry in an ineffective assistance claim pursuant to §2254, however, is not whether a trial judge should or should not have been more specific; rather, my inquiry is limited to asking whether the Pennsylvania state courts, in analyzing petitioner's first claim, properly applied federal law. Because the Superior Court has had a full and fair opportunity to pass on this claim, the single question before this court is whether– in so ruling– the Superior Court effected an unreasonable application of *Strickland* and its progeny. I find that it did not.

In assessing petitioner's claim, the Superior Court held as follows:

A review of the record reveals the prosecuting attorney requested an instruction pursuant

to *O'Hanlon*; however, the trial court denied the request. Appellant admits that the court utilized a charge comporting with the standard jury instruction. Therefore, trial counsel cannot be found ineffective in failing to request an instruction that the trial court specifically refused to allow, and there is no arguable merit to Appellant's claim of ineffectiveness. (Moreover, a review of the record reveals the trial court instructed the jury on recklessness as per the statutory definition. Viewing the charge as a whole, it was sufficient to properly advise the jury as to the law.)

Super. Ct. Op. 8/19/1997 at 6.

The Superior Court assessed trial counsel's performance in accordance with the two-pronged approach of *Strickland*, determining that an attorney's failure to request an instruction that the trial court had already refused to allow after the same instruction was requested by the prosecution was not deficient performance. In light of the "strong presumption" of competence to which an attorney is entitled, the Superior Court's application of *Strickland* was not objectively unreasonable. *See Buehl v. Vaughn*, 166 F.3d 163, 199 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 689) ("In evaluating counsel's performance, we are 'highly deferential' and 'indulge a strong presumption that, under the circumstances, counsel's challenged actions 'might be considered sound...strategy.'"). Because the trial court had previously <u>specifically refused</u> to give the *O'Hanlon* instruction to which petitioner refers, the Superior Court's determination that trial counsel's performance was arguably sound is a proper application of *Strickland*'s highly deferential standards. *See Buehl*, 166 F.3d at 169 ("Because counsel is afforded a wide range within which to make decisions without fear of judicial second-guessing, we have cautioned that it is 'only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance.'")

(citing *United States v. Gray,* 878 F. 2d 702, 711 (3d Cir.1989)).[14]  Defense counsel is not

required to perform what would obviously have been a futile act.

The Superior Court's analysis was a reasonable application of federal law and resulted in

a decision that is justifiable under *Strickland*.  Accordingly, petitioner cannot demonstrate that

the Superior Court's application of *Strickland* was objectively unreasonable, and therefore is not

entitled to habeas relief on the claim that counsel was ineffective for failure to request a jury

instruction.

B.    The trial court's jury instruction regarding provocation

Petitioner next alleges that his trial counsel was constitutionally ineffective for failing to

object to the court's jury instructions regarding provocation.  The trial court charged the jury as

to the issue of provocation as follows:

> So I have to instruct you on the definition of self defense.  That terminology "self
> defense" is in the vernacular; the legal terminology is called "justification."  The
> defendant claims that he swung his helmet at her in self defense.  Self defense, if
> justifiable, is a complete defense to the charge.  And since the Commonwealth has the
> burden of proving the guilt of the accused, the Commonwealth has the burden of
> convincing you beyond a reasonable doubt that at the time and place in question in that
> bar, he did not act in a justifiable self defense manner.  The basic rule or definition of self
> defense is that the defendant is justified in using force against another person, if he
> reasonably believes he is in immediate danger of unlawful force from that person and
> reasonably believes it's necessary then and there to use the force which he does to protect
> himself.
>
> Now the defense's contention is, as I understand it, having a glass eye and only
> having sight of one other eye, that he was struck in the so called good eye.  His glasses

---

[14]Moreover, I find that no prejudice resulted from trial counsel's failure to object.  The
applicability of *O'Hanlon* had already been squarely addressed and ruled upon by the court.
Furthermore, based on the severity of the injury sustained by the victim and the overwhelming
evidence against him, petitioner's suggestions that a more specific jury instruction would have
changed the outcome of the trial is mere speculation.

were dislodged and fell to the ground or floor and that this was an unprovoked striking by this young lady. And that he expected her to strike again and therefore, he swung out with his helmet to protect himself.

The defendant's right to self defense depends on what he reasonably believes. Thus, the right of self defense may be available not only to a person who is in actual danger of an unlawful attack, but also to one who mistakenly believes that he is. A person is entitled to estimate the necessity for the force he employs under the circumstances as he reasonably believes them to be at the time. In the heat of conflict a person who has been attacked ordinarily has neither the time nor composure to evaluate carefully the danger and make the necessary judgment about exactly how much force is need to protect himself. Consider the limitations of human nature when judging what the defendant believed and whether his beliefs were reasonable.

Now, as I interpreted his statement concerning self defense, it's that he was hit when he didn't expect it, was hit in his good eye, lost his glasses and only had one eye. Expected the attack to continue against him and therefore, he felt it necessary to swing his helmet.

That is also one version of the facts in this case. <u>And you and you alone as the jury will decide which version you accept.</u> It was also a different version presented to you that after this young lady struck him in the face, he left that area, went over onto a table where he got his helmet and then came back and then swung it at her. So which version of the facts you accept will determine how you apply this justification defense.

If a defendant employs what is known as non-deadly force to protect himself, the defendant must have been free from fault in provoking the difficulty, which led to his use of force. It's his contention that this was an unjustified, unlawful attack on him.

There was testimony presented to you that throughout the evening he was pulling on this young lady's halter top or tank top or muscle shirt. He was feeling her chest from time to time over her objections, causing her to move at least on three occasions. <u>Once again, it's up to you to determine which version you accept.</u> But in order to employ force against another, in a so-called self defense situation, the actor, the defendant, must be free from fault and provoking the difficulty which led to his use of force. A defendant who is without fault in provoking a difficulty has no duty to retreat before using non-deadly force. He may stand his ground, and only consider the possibility of retreating when estimating the danger to him and the necessity of using the force he employs. He can take such measures as he feels are justified to protect himself. This is the basic definition of justification. However, in the defense of justification, if the jury concludes that what was used by the actor or the defendant was deadly force, then a different set of rules apply. So in evaluating my instruction to you about justification or self defense, you have to decide, it seems to me, whether the force used was non-deadly force or whether it was deadly force, because the rules are different.

Deadly force is a force which under the circumstances in which it is used, is readily capable of causing death or serious bodily injury.

Now the defendant's version in the statement is that he merely swung his helmet in the direction of the girl. There was testimony offered by people there that on the contrary, this helmet was potentially swung at her. One version, by the strap; the other by holding onto the helmet, whichever version you accept, and striking her with considerable force on the side of the head.

If you decide in this case that what was employed here by the defendant was deadly force, then you have to apply the following rules in determining whether or not you feel that this was justifiable conduct on his part.

As in the law there are additional requirements when deadly force is used which are more restrictive when a defendant uses deadly force to protect himself than when he uses non-deadly force. If a defendant employs deadly force to protect himself, the use of force must meet the following requirements, as well as the basic rules which I told you a few moments ago.

The defendant must reasonably believe that he is in immediate danger of serious bodily injury himself, from the other person and reasonably believes it's necessary then and there to use deadly force upon that person to protect himself. If you conclude that he didn't use deadly force, then you use the first criteria I gave you.

If you conclude that he used deadly force, then in deciding whether or not you're going to accept justification and self defense as a defense in this case, you need to determine whether he had a reasonable belief that then and there in this bar, at the time and place in question, he was in immediate danger of death from this girl or whether it was immediate danger of serious bodily injury from her and believed to protect himself from either death or serious bodily injury, that he had to hit her with a helmet.

If you conclude that he used deadly force, then in order for this justification defense to be available to him, he must be free of fault in provoking the incident. And I told you what the various facts and scenarios were, and who provoked what in the bar that night, but that depends on who you believe.

If you conclude that deadly force was used, before one may employ deadly force, one has a duty to retreat, if one knows that he can avoid the necessity of using deadly force with complete safety by retreating.

You have to scrutinize the testimony you heard in this case. Look at that chart of the bar, its layout, where the various people were supposed to have been; where the so-called back door was and eventually the defendant as his friend, Scott, exited. Whether he had available to him at that time, at that point, the avenue to retreat and leave. Because you can't use deadly force if you have an avenue for retreat open. You have to consider, if you conclude that he used deadly force, whether whatever this young lady was doing to him, it was such that he reasonably believed if she kept it up she would kill him or if she kept it up she would inflict serious bodily injury on him. I'll believe this is all for your determination.

As I indicated to you, if this all sounds complicated to you and difficult to follow, you're entitled to come back and ask me for clarification if you think it's necessary.

When you get into the question of justification, depending on credibility, you may not entertain that notion depending on what testimony you find acceptable. On the other hand, you may get into this notion of justification depending on what testimony you find to be credible.

Trial Transcript, 11/14/1995, 110-117 (attached to Commonwealth's Answer as Exhibit C) (emphasis added).

The thrust of petitioner's complaint is that the trial court– in defining provocation– erroneously summarized trial testimony for the jury. Petitioner contends that the testimony summarized by the trial court related to the charge of indecent assault, which had been dismissed. Because the indecent assault charge was not before the jury, petitioner argues that the trial court's decision to highlight testimony relating to this charge was prejudicial. According to petitioner his attorney's failure to object to this instruction, therefore, constitutes ineffective assistance of counsel.

Petitioner also believes the trial court's instruction was erroneous because it did not comply with the meaning and purpose of the applicable Pennsylvania statute. More specifically, petitioner questions the relevance of a statute which refers to deadly force given that his actions "surely cannot be deemed as action intended to cause serious harm to anyone" due to the fact that he lost his left eye in 1971 and, thus, is "terrified of being blinded." Objections at 20. Finally, petitioner objects to the trial court's instruction because he believes the court impermissibly related the facts of the case to the jury, rather than instructing them as to the law.

The Superior Court of Pennsylvania reviewed this claim on PCRA appeal and affirmed the adequacy and propriety of the trial court's instruction, thus finding trial counsel effective. In addressing this issue, the Superior Court held as follows:

20

A review of the record reveals that the instruction given by the court was derived from 18 Pa. C. S. A. section 505 and was without error. Therefore, there was no basis for counsel to object to the instruction, and there is no arguable merit to Appellant's claim of ineffectiveness in this respect.

Super. Ct. Op. 10/26/01 at 6-7. This court finds that because the trial judge's instruction on provocation amounted to a proper statement of the law, trial counsel's failure to object to said instruction cannot amount to ineffective assistance of counsel.

Under Pennsylvania law, "[t]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa. C.S.A. § 505(a). More specifically, the law as it relates to "provocation," particularly– that portion which petitioner argues was misstated– states that the use of deadly force in self-defense is not justified where "the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter." *Id.* § 505(b)(2)(i).

With respect to the use of <u>non-deadly force</u> by a defendant, the statute is silent as to the specific requirement that defendant be free from fault or provocation in order to claim self-defense. Petitioner claims that trial court's instruction that "[i]f a defendant employs what is known as non-deadly force to protect himself, the defendant must have been free from fault in provoking the difficulty, which led to his use of force," therefore, is in error. This court diagrees.

The judge's charge to the jury consumed seven pages and discussed the concept of "provocation" at length. A reading of the charge indicates that the court properly advised the jury on all elements of self-defense and provocation, and did so in accordance with the meaning and purpose of 18 Pa. C.S.A. § 505. As the Pennsylvania Supreme Court has held, "the meaning

of the statute is clear.  In order to establish that an actor was the aggressor or provoker and,

hence, was not entitled to claim a defense of self-defense or defense of others, there must be

some evidence to support the inference that the defendant's acts constituted 'an intent to cause

death or serious bodily injury.'" *Commonwealth v. Samuel*, 590 A.2d 1245, 1248 (Pa. 1991).

The jury charge contained language substantively indistinguishable from that articulated by the

statute and by the Pennsylvania Supreme Court in *Samuel*.  The instructions to the jury in the

case at bar, therefore, embodied a sufficient exposition of the critical points of law relevant to

Petitioner's charges.  Counsel's reliance upon the charge– and failure to object to the charge–

was therefore justified.[15]

Moreover, even assuming arguendo that the judge should have gone into even greater

depth regarding the law of provocation, a defendant is "not necessarily entitled to relief simply

because of some imperfections in the trial, so long as he has been accorded a fair trial."

*Commonwealth v. Hill*, 301 A.2d 587, 590 (1973); *see also Commonwealth v. Prosdocimo*, 578

A.2d 1273, 1276 (Pa. 1990) ("We will not rigidly inspect a jury charge, finding reversible error

for every technical inaccuracy, but rather evaluate whether the charge sufficiently and accurately

apprises a lay jury of the law it must consider in rendering its decision.).  As the Supreme Court

has emphasized repeatedly, "a single instruction to a jury may not be judged in artificial isolation,

but must be viewed in the context of the overall charge."  *Cupp v. Naughten*, 414 U.S. 141, 146-

47 (1973).  Articulating the rationale behind this "well established proposition," the Court in

---

[15]Furthermore, because the Superior Court approved the charge as given, it was correct under state law and counsel's failure to object cannot, therefore, be considered ineffective assistance of counsel.

*Cupp* recognized that "a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge.  Thus not only is [a] challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction."  *Id.* at 147.

The jury charge accurately states the law of provocation and does not amount to error.  Because "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument," *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999), petitioner has failed to demonstrate that his trial counsel's performance was deficient.  His ineffective assistance of counsel claim, therefore, must fail.[16]  Moreover, even if the instructions were faulty, petitioner has failed to demonstrate that "but for" counsel's failure to object, "the result of the proceeding would have been different" or that counsel's alleged ineffectiveness was "sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  Petitioner's ineffectiveness claim thus fails under the second prong of *Strickland* as well.

Accordingly, the Superior Court's analysis of this claim did not constitute an unreasonable application of federal law, and petitioner's second habeas claim will be denied.

C. Medical Evidence

---

[16]Petitioner contends repeatedly that those facts which gave rise to the indecent assault charge brought against him– which was dropped by the prosecution before the jury's deliberation– should not have been mentioned by the judge during his charge.  While the dismissal of the charge was irrelevant to the jury, the facts underlying this charge are a relevant part of the history of the events in question and served to create a more complete factual backdrop against which the jury evaluated the evidence.  The judge's referencing of these facts, therefore, was not inappropriate.

In his third claim for federal habeas relief, petitioner claims that his trial counsel was constitutionally ineffective for failure to call witnesses "who were at trial as medical professionals" as a means of entering a medical report into evidence. Pet. Writ Habeas Corpus at 10. Petitioner argues introducing this medical report would have established that prior to striking the victim with his motorcycle helmet he had been hit in the eye– his only eye– and was unable to see. According to petitioner, the blow he struck to the victim was a reflexive reaction which resulted from his temporary inability to see. His attorney's failure to introduce evidence of this injury, he contends, constituted ineffective assistance of counsel.

The Superior Court reviewed this claim on PCRA appeal and denied petitioner's claim on the merits, reasoning as follows:

> Appellant claimed that his eye doctor, Dr. Harmon Stein, confirmed he suffered an injury to his remaining eye. Appellant's wife worked for the eye doctor and testified at the PCRA hearing that she was the custodian of records for the office, but was not called by defense counsel to testify to the injury. Appellant's wife also presented the damaged eyeglasses her husband was wearing on the day of the incident, but stated that, although defense counsel was aware she had them, he did not introduce them at trial.
>
> At the previous hearing on July 2, 1996, it was established that Appellant's eye doctor did not wish to testify regarding any eye injury. Further, trial counsel did not wish to call Appellant's wife as a witness in the case, as he wanted to avoid the introduction of other information damaging to the case. Moreover, testimony was introduced at trial that the victim struck Appellant in the face; therefore, the medical testimony would merely have corroborated this version of events. Accordingly, trial counsel cannot be found ineffective for pursuing a reasonable trial strategy, and Appellant has failed to establish that he was prejudiced by any such omission.

Super. Ct. PCRA Op. 10/26/01 at 9.

The Superior Court's analysis was not "an unreasonable application of" federal law. Ineffective assistance claims which derive from counsel's decision to call or not call certain witnesses are governed by *Strickland*. *See, e.g., Philson v. Barbo*, 77 Fed. Appx. 123, 127, 2003

WL 22316930 (3d Cir. Oct. 9, 2003) (under "unreasonable determination of the facts" prong of

section 2254, the Third Circuit found that counsel's decision not to call two witnesses because of

a potential conflict in testimony was "trial strategy," afforded it "appropriate deference," and did

not find ineffective assistance of counsel under *Strickland*); *United States v. Archer*, 59 Fed.

Appx. 183, 185, 2003 WL 249089 (9th Cir. Feb. 4, 2003) (on appeal from §2255 denial, court

applied *Strickland*'s "strong presumption" of competence to trial counsel's decision not to call a

specific witness, holding that this strategic decision did not constitute unreasonable professional

performance under *Strickland*); *United States v. Dejesus*, 57 Fed. Appx. 474, 478 2003 WL

193736 (2nd Cir. Jan. 28, 2003) (trial counsel's decision not to call a character witness was

grounded in a strategy of preventing the prosecution from attacking defendant's character and

therefore was "inherently tactical," "generally should not be disturbed," and was not found to be

"objectively unreasonable" under *Strickland*); *LaFrank v. Rowley*, 340 F.3d 685 (8th Cir. 2003)

(counsel's alleged ineffectiveness for failure to call a witness was evaluated under *Strickland*

and, because it was a "matter of trial strategy," found to be reasonable); *Castillo v. Matesanz*, 348

F.3d 1, 15 (1st Cir. 2003) (affirming district court's determination that trial counsel's failure to

call two witnesses– whose proposed testimony was merely corroborative and may have

contradicted defendant's own testimony– was "a strategic decision which the court will not

second guess" and was "well within the wide range of reasonable professional assistance,"

reasoning that the district court's ruling was "an appropriate application of *Strickland*'s

insistence on the 'wide latitude counsel must have in making tactical decisions'") (quoting

*Strickland*, 466 U.S. at 689).

　　　　More specifically, a claim for ineffective assistance of counsel for failure to call a witness

is "precisely that type of strategic decision which the court in *Strickland* held to be protected from second-guessing." *Sanders v. Trickey*, 875 F.2d 205, 212 (8th Cir. 1989). Because an attorney's decision to call or not call a witness is strategic decision, a "strong presumption" exists that "counsel's decision not to call [the witnesses] was the result of sound trial strategy." *Reinert v. Larkin*, 211 F. Supp. 2d 589, 599 (E.D. Pa. 2002).

  The Superior Court applied an appropriately deferential standard in determining that counsel's decision not to call Dr. Stein or petitioner's wife was a "reasonable trial strategy" and did not amount to deficient performance. The record is clear that counsel's decision not to call these two witnesses was based upon strategic considerations– precisely those type of considerations to be afforded deference under *Strickland*– and that counsel believed calling either witness could bring about a potentially harmful result.

  With respect to Dr. Stein, counsel testified that he decided not to call him to the stand because he believed his testimony would not be helpful:

> [Dr. Stein] told me, first of all, that he didn't want to testify. That he did not ever indicate that he would be willing to testify. That he wouldn't possibly help me by calling him. That the report was such that the report would be better than his testimony. That his recollection of the injury was that it was slight, if noticeable....[I]t was very obvious that he was going to be hostile and wasn't going to help us.

Transcript, Evid. Hrg. 7/2/96 at 29 (attached to Doc. #4 as Ex. D). By calling a potentially hostile witness with only a vague memory of a slight injury, counsel could very well have undermined his client's position that he temporarily lost sight in his eye and thus swung the helmet as a protective reflex. Counsel understood this possibility, appreciated its potential impact upon petitioner's defense, and formulated an appropriate strategy in response– namely, to avoid calling Dr. Stein to the stand. This decision was arguably sound, and therefore cannot be

held to fall "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

With respect to Jody Dunlavey, petitioner's wife and a custodian of records at Dr. Stein's office, counsel testified that he did not call her to the stand because he believed the potential prejudice from her cross examination testimony would be detrimental to petitioner's defense:

> I was concerned that calling Jodi Dunlavey as a witness would open her for cross-examination on other issues that had been minimized or avoided during the trial. And I made the tactical decision, I thought that she could testify as custodian of records and get it in, but that by doing so, she would be subject to other cross examination that would hurt more than this record would help."

Transcript, 7/2/96 at 31 (attached to Doc. #4 as Ex. D). Counsel's decision that the potential for prejudice posed by a given witness outweighed the value of her testimony is quintessentially strategic and will not be re-visited by this court. Such after-the-fact analysis– undertaken with the benefit of hindsight– is precisely that type judicial second-guessing which *Strickland* prohibits. Counsel evaluated the situation, considered his options, and made a tactical decision not to call Jody Dunlavey to the stand. This reasoned decision cannot constitute deficient performance.

Petitioner argues that counsel misunderstood the law and that Jody Dunlavey could have been called to testify as a "medical professional only," thereby eliminating the possibility of any damaging cross examination. Objections at 26. Assuming for the sake of argument that petitioner is correct– that is, that counsel was mistaken, and that the scope of the cross-examination of Jody Dunlavey could have been limited– counsel's performance nonetheless does not constitute ineffective assistance. *See Diggs v. Owens*, 833 F.2d 439, 446 (3d Cir. 1987) (finding effective assistance of counsel and, in so finding, holding that trial counsel's decision not to call a particular witness was strategically sound <u>despite</u> being based on a potentially

27

erroneous legal assumption).  In *Diggs*, a habeas petitioner alleged that his trial counsel had

erroneously discouraged him from calling his wife to the stand as an alibi witness by advising

him that she would be impeached with her previous refusal to testify before the grand jury.  *Id.* at

445-46.  Holding that defense counsel's advice did not amount to ineffective assistance, the

Third Circuit noted that

> [Defendant's wife's] testimony would have appeared self-serving and in this case in
> which there were no eyewitnesses connecting Diggs to the crimes, presenting her might
> have caused the jury to focus its attention on a defense that seemed contrived rather than
> on the possible weakness of the state's case.  In any event the right to effective assistance
> of counsel does not guarantee that an attorney will never err.

*Id.* at 446.  Moreover, the *Diggs* court held that "the decision not to call her was strategically

sound, even if it was based on an erroneous assumption."  *Id.*

Like trial counsel in *Diggs*, petitioner's attorney in this case made a strategic decision not

to call defendant's wife to the stand due to the possibility that damaging testimony could be

elicited during cross-examination.  "Even if it was based on an erroneous assumption," this

decision was tactical and thus, for the purposes of this court's analysis, sound.

Furthermore, as noted by the Superior Court on PCRA appeal, the defense presented

testimony at trial that the victim struck petitioner in the face.  Medical testimony concerning an

injury to petitioner's face or eye, therefore, would merely have corroborated testimony already in

evidence.  Counsel's failure to present such medical testimony, therefore, could not have

prejudiced petitioner and thus cannot rise to the level of ineffective assistance.

Because counsel's failure to call Dr. Stein and Jody Dunlavey was a strategic and

reasoned decision, petitioner has not established the deficient performance necessary to

demonstrate ineffective assistance under *Strickland*.  Moreover, he has failed to suggest any

prejudice stemming from counsel's decision, thus failing to meet the second prong of *Strickland*.

Because I hold that trial counsel was not constitutionally ineffective for failure to call these two

witnesses, the Superior Court's application of *Strickland*– through which it arrived at the same

conclusion I do today– was not objectively unreasonable.  To the contrary, the Superior Court's

analysis was sound, well-reasoned, and entirely consistent with that body of Sixth Amendment

jurisprudence which has evolved in response to claims similar to those brought by petitioner

today.  Petitioner is therefore not entitled to federal habeas relief on this claim.

D. Physical Evidence

In his fourth claim for federal habeas relief, petitioner contends that his trial counsel was

ineffective for failing to introduce his broken glasses.  According to petitioner, physical evidence

that the victim assaulted him would have supported his claim of self-defense and lack of intent.

*See* Pet. Writ Habeas Corpus at 10.  The Pennsylvania Superior Court addressed this claim on

direct appeal, holding as follows:

> Appellant next claims that trial counsel was ineffective for failing to introduce his broken
> glasses into evidence at trial when he was aware of their existence.  He claims that
> '[s]ince the Commonwealth's version of events was that [he] was slapped, the glasses
> would have served to rebut that contention as well as to boost the credibility of [his]
> statement to the police that he acted in self defense.'  Initially, we note that, although
> some Commonwealth witnesses testified that the victim merely slapped Appellant, and
> the victim herself stated that she backhanded him, other witnesses testified that the victim
> punched Appellant, as to the force of the impact staggering Appellant who was much
> larger than the victim, and the fact that his glasses were broken.  Moreover, even if this
> claim is of arguable merit, at the evidentiary hearing trial counsel testified that he did not
> want to introduce the glasses by putting Appellant or his wife on the stand because, as a
> matter of trial strategy, he wished to avoid other potentially prejudicial information being
> elicited from them on cross-examination.  See Commonwealth v. Collins, 519 Pa. 58, 545
> A.2d 882, 886 (1988) (trial counsel's decisions as to matters of trial strategy cannot be the
> subject of an ineffectiveness claim).  In addition, as to the admission of the glasses via
> any Commonwealth witness, trial counsel testified that he knew Appellant and his wife
> were in possession of the glasses from the time of the accident until the time the case was

ultimately tried.  Thus, counsel inferred that the Commonwealth could attack the
evidentiary value of the glasses.  Finally, the trial court specifically rejected the testimony
of Appellant and his wife at the evidentiary hearing as incredible.  The court did not
believe, therefore, the testimony of Appellant's wife that trial counsel informed her that
he forgot to introduce the glasses as evidence.  Given these circumstances, Appellant has
not established prejudice.

Super. Ct. Op. 8/19/97 at 9-10.

In his objections, Petitioner argues that his attorney's failure to introduce the broken

glasses was erroneous because this physical evidence would have demonstrated that the point of

impact of the victim's blow was his right eye.  Because the "crux of the instant case was whether

the Petitioner could see or not" when he swung at the victim, petitioner contends that counsel's

failure to introduce the broken glasses cannot be considered a reasonable trial strategy.

Objections at 30.  In addition, petitioner believes trial counsel's testimony regarding the

compromised evidentiary value of the glasses is insincere, noting that it was counsel himself who

directed that Jody Dunlavey keep the eyeglasses in her possession until the time of trial.

Petitioner also notes that a witness was present at trial who could have testified that the

eyeglasses were in the same condition at trial as they had been the morning after the incident in

question, thus eliminating counsel's concerns about credibility.  Finally, petitioner contends that–

assuming counsel's decision not to put the Dunlaveys on the stand was sound– the eyeglasses

could have been introduced through any number of other witnesses, thus avoiding the problem of

damaging cross-examination.

I find that the Superior Court did not unreasonably apply *Strickland* on this issue.  During

the evidentiary hearing held on this matter, petitioner's trial attorney stated that his decision not

to introduce the eyeglasses was based upon his determination that "the potential for prejudicial

30

cross-examination" of those witnesses through whose testimony he could enter the glasses into evidence "outweighed the probative value." Transcript, 7/2/96 at 33-34 (attached to Doc. #4 as Ex. D). The Superior Court accepted counsel's decisions as reasonable, found no prejudice, and in so doing properly applied *Strickland*. Trial counsel's strategies are entitled to great deference under *Strickland*; "[i]n evaluating counsel's performance, [courts] are 'highly deferential' and 'indulge a strong presumption' that, under the circumstances, counsel's challenged actions 'might be considered sound...strategy." *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 689). Moreover, calculating the danger posed by potentially damaging testimony is a proper tactical consideration and counsel's attention to this matter was both reasonable and effective.

Even if counsel could have introduced the broken eyeglasses without opening the door to problematic cross-examination, petitioner suffered no prejudice from the absence of this physical evidence. As the Superior Court noted repeatedly, the jury had already been presented with evidence– in the form of testimony– that petitioner had been struck in the face by the victim, and that his glasses had been broken. While the introduction of the actual glasses may have strengthened this testimony, it would have been merely corroborative. Petitioner thus suffered no prejudice under the second prong of *Strickland* and the Superior Court's analysis, accordingly, was not an unreasonable application of, nor contrary to, federal precedent. Petitioner will be denied relief on his fourth habeas claim.

E. Jury Instructions Regarding the Re-Reading of Testimony

In his fifth claim for federal habeas relief, petitioner alleges that his trial counsel was constitutionally ineffective for his failure to object to the court's jury instructions regarding the

31

re-reading of testimony.  The trial judge's instructions read as follows:

> When you're back deliberating, if you have some problems with trying to recall the testimony, unfortunately, you're not permitted to come back to the courtroom and have the stenographer read it back to you or have me read to you from my notes.  The law is such that the twelve jurors who are deliberating will have to rely on their collective recollection as to what the testimony in the case was.  However, if you're confused by any legal instruction that I have given you, when you are back deliberating, if confusion surfaces, you are permitted to ask questions on the legal definitions.

Transcript, 11/14/95 at 98-99.

The Superior Court addressed the merits of petitioner's challenge to this instruction on

PCRA appeal:

> It is within the trial court's discretion to deny the jury the ability to request that portions of testimony be re-read to them during deliberations.  'When a jury requests that recorded testimony be read to it to refresh its memory, it rests within the trial court's discretion to grant or deny such request.'  Here, the court merely advised the jury in advance that it would not honor any such requests.  Therefore, there is no arguable merit to this allegation, and counsel cannot be found ineffective in this regard.

Super. Ct. PCRA Op. 10/26/01 at 5 (citations omitted).

The Superior Court did not effect an unreasonable application of *Strickland* by holding

that counsel's failure to object to this portion of the jury charge was not in error.  Well-settled

Pennsylvania law holds that the decision whether or not to re-read recorded testimony to the jury,

upon request, is committed to the discretion of the trial court.  *See Commonwealth v. Johnson*,

838 A.2d 663, 677 (Pa. 2003) ("the determination whether to grant a request from jurors for a

reading of a portion of the trial testimony during deliberations for the purpose of refreshing its

recollection rests within the discretion of the trial court.  The reading of the testimony does not

implicate reversible error, provided that it does not place undue emphasis on one witness's

testimony") (citations omitted); *see also Commonwealth v. Ingram*, 591 A.2d 734, 742 (Pa.

Super. 1991) ("The general rule is that when a jury requests that recorded testimony be read to it

to refresh its memory, it rests within the trial court's discretion to grant or deny such request.");

*Commonwealth v. Bell*, 476 A.2d 439, 449 (Pa. Super. 1984) (same).  The trial court's

instruction, therefore, was perfectly proper under Pennsylvania law and counsel had no grounds

on which to object.  Any such objection would have been entirely without merit.  His failure to

so object, therefore, cannot constitute deficient performance.  *See Sanders*, 165 F.3d at 253

(holding that there can be no ineffectiveness for failure to raise a meritless argument).

Petitioner's fifth claim for federal habeas relief will therefore be denied.

F. Evidence of the Victim's Intoxication

  In his sixth habeas claim, petitioner alleges that trial counsel was constitutionally

ineffective for his failure to introduce evidence of the victim's intoxication at the time of the

incident.  He claims that counsel possessed medical reports demonstrating that the victim had

drugs and alcohol in her system the night in question.  Petitioner also contends that trial counsel

intentionally withheld this evidence at trial.  *See* Pet. Writ Habeas Corpus at 9B.  Because this

sixth habeas claim presents a detailed and complicated factual scenario, it merits a slightly more

lengthy discussion.

  At trial, the victim– Katie Maschal– testified that she had been to the bar in question

earlier in the evening to purchase a quart of beer from the "take-out" portion of T's Sports Bar in

Croydon.  Transcript 11/14/95 at 23-24.  According to Maschal, she drank that quart of beer with

a friend, and later returned to the bar around 10:00 p.m.  Transcript 11/14/95 at 22-25.[17]  While at

_____

[17]The bartender at T's Sports Bar– Jennifer Weinszgerber– testified that Maschal had
been seated in the bar earlier, had left, and had eventually returned.  It is unclear from

the bar, Maschal testified that she consumed two glasses of beer and one shot of schnapps. Transcript 11/13/95 at 102.  After testifying about petitioner's multiple unwelcome advances upon her– both physical and verbal– Maschal admitted that she "swung around off [her] stool, jumped down and backhanded him in the face."  Transcript 11/13/95 at 107.  According to Maschal and others– the testimony of whom is substantively consistent– petitioner responded to Maschal's assault by swinging a motorcycle helmet at her.

With respect to petitioner's sixth ground for habeas relief, the significant issues in question relate to Maschal's level of intoxication; trial counsel's awareness of her intoxication; the content of Maschal's medical records acquired from the hospital; trial counsel's use of these records; and the retention of a toxicologist to opine as to Maschal's emotional state during the altercation and her ability to remember the events when testifying at trial.

Petitioner believes that trial counsel was ineffective for failing to introduce evidence of Maschal's use of three prescription drugs on the night in question.  When combined with alcohol, petitioner believes these drugs caused abnormal behavior in Maschal.  He also contends that this medical information– had it been entered at trial– "would have explained to the jury, why Complainant was the only witness out of 7 prosecution witnesses to assert that Petitioner committed a [sic] act of indecent indecent assault upon her."  Petitioner's Reply (Doc. #7) at 27. Ultimately, petitioner believes that "counsel could have easily made arrangements with any number of Doctors/toxicologists to testify at trial and this testimony would have clearly supported Petitioner's position that he had no idea why complainant attacked him.  Which would

_____

Weinsgerber's testimony whether Machal's initial visit had been to the "take-out" portion of the bar or not.  *See* Transcript 11/13/95 at 39-41.

have been vital to his position of self-defense [sic]." *Id*. at 28.

At the post-trial PCRA hearing, petitioner testified that following his trial he had reviewed the admittance forms completed by the Lower Bucks Hospital upon Maschal's arrival there following the confrontation. Transcript 9/19/00 at 41. According to petitioner, these records had been in trial counsel's possession but were not made known to him until his wife picked up the case file from trial counsel's office. *Id.* The admittance records indicated that Maschal had informed the hospital staff that she was taking the drugs Effexor, Xanax, and Soma. *Id.* This evidence was not presented at trial.

Petitioner testified that he had asked his attorney several times whether medical records showed any drugs in Maschal's system, and had been told that no blood tests had been performed. *Id.* at 42. Indeed, petitioner admitted that "there is no blood test or blood screening that specifically indicates the presence of the three previously mentioned drugs." *Id.* He relies upon the admittance report, however– on which Maschal herself indicated use of these three drugs– as evidence of the victim's altered and intoxicated state on the evening in question, and contends that his trial counsel's failure to make use of this testimony constituted ineffective assistance of counsel.

Upon retaining a new attorney, Dunlavey petitioned the court to retain a toxicologist and obtained a report, prepared by toxicologist Gary L. Lage, discussing the effect that these three drugs– in conjunction with alcohol– would have had on Maschal. In his report, Dr. Lage calculated that Maschal's blood alcohol level of .137%, recorded at 5:33am, would have been at least .19% at the time of the confrontation. *See* Toxicologist Report at 3 (entered into evidence

at PCRA Hrg. 9/19/00 as Ex. D-1).  Dr. Lage opined that such a blood alcohol level "renders

individuals to be markedly intoxicated, including loss of judgment and coordination...individuals

are more likely to become violent."  *Id.*  Moreover, Dr. Lage concluded that Maschal's "blood

alcohol level alone, and even more so in combination with the other drugs, [which he calculated

to be present in her system given their "half-lives"] would have resulted in an individual that

would have impaired judgment, and lack of inhibitions.  These effects result in individuals that

can overreact to a perceived threat."  *Id.* at 4.

Petitioner argues that his trial counsel could have obtained this type of expert opinion

prior to trial, and that such expert testimony would have been "extremely important because had

the jury known about the victim's level of intoxication, in light of the fact that the only issue of

provocation for her attack on Petitioner was indecent assault[,] which was dismissed[,] the jury

would have reasonably understood that the attack upon Petitioner was a direct result of the victim

being marke[d]ly intoxicated...and thus there is a strong reasonable probability that the outcome

of the trial would have been different."  Objections at 37-38.  Indeed, Maschal testified at trial

that she had trouble recalling some of the events on the night in question.  Transcript 11/13/95 at

105.

Petitioner's trial counsel, however, testified at a post-trial motion evidentiary hearing that

he did not pursue the trial strategy now advanced by petitioner because of financial constraints.

While he recalled that the admittance report "indicated a self-reported use of a number of

different substances," the fee required by a toxicologist to review the record in question "was

prohibitive."  Transcript 7/2/96 at 41-42.  Trial counsel admitted that he thought "it might be

important to learn what the interaction is between this level of alcohol and these prescription

36

drugs," however after discussing fees with petitioner he decided not to pursue this line of investigation any further.  *Id.* at 43-44.  Moreover, he testified that "[a]t trial, I think it became very obvious that people that were in this bar were extremely intoxicated.  I think it became very obvious that Katie Maschal was extremely intoxicated."  *Id.* at 43.  As a result, he stated that "there were other things going on with Katie Maschal, that we were trying to pursue....there were more pressing and important things than those medical records."  *Id.* at 44.

Petitioner testified in response that McHugh's statement "that there was a mutual consent between [petitioner], [McHugh] and [Jody Dunlavey] not to hire a toxicologist" was "false and misleading testimony."  Transcript 9/19/00 at 45.  More specifically, petitioner stated:

> Your Honor, we were never informed that there was such medical evidence having to do with that.  As I said, Mr. McHugh withheld that from us.  As far as the money goes, we gave Mr. McHugh $4,000, and he never mentioned [a] toxicologist or nothing....[h]e never said to me, 'Jim, we will need a toxicologist,' or, 'what do you want me to do about this?'  He gave false and misleading testimony, Your Honor.

*Id.* at 45.

Given this factual backdrop, I turn now to the state court's analysis of this claim.  The Pennsylvania Superior Court evaluated petitioner's sixth habeas claim on PCRA appeal.  After setting forth a cursory summary of the facts related above, the court– relying on the Court of Common Pleas– held as follows:

> The PCRA court found the proposed testimony irrelevant.  While drinking at a bar, Appellant attempted, on several occasions, to grope the victim against her will.  After the bartender at the establishment refused to serve any more alcohol to Appellant, he began to argue with the manager.  As Appellant was arguing with the bartender, the victim attempted to intervene, eventually slapping Appellant across the face.  Appellant then swung his motorcycle helmet at the victim and struck her in the head, rendering her unconscious.  The PCRA court found that, under the circumstances of the case, whether the victim had consumed alcohol that evening was irrelevant.  We find there is no error in the reasoning of the PCRA court, and that the PCRA court's findings are supported by the

37

record.

Super. Ct. Op. 10/26/01 at 8.

Because the Superior Court did not undertake any analysis apart from that already performed by the PCRA court below, it is necessary to turn to the January 9, 2001 Order of the Court of Common Pleas of Bucks County, Crim. No. 2992/95. The question before this court is whether the PCRA court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented," or whether the PCRA court's decision involved an "unreasonable application of" federal law. 28 U.S.C. § 2254(d)(1).

> The PCRA Court held as follows:
>
> Next, petitioner claims both trial counsel and appellate counsel were ineffective for failing to introduce evidence as to the alleged intoxication of the victim. The testimony in the case was that in that bar on the night in question, after petitioner was "flagged," he got verbally abusive with the manager and threatened to hit him with a motorcycle helmet he was carrying. He then placed the helmet on a nearby table. Next he got into a confrontation with the female victim. He called her a "cunt" and then he grabbed her breasts. She slapped him across the face. He then walked over to the table, got his helmet and swung it by the strap at her, hitting her on the side of the head, knocking her to the floor. She sustained serious and permanent injuries and was hospitalized for several days. The neurosurgeon testified if he had not operated, she would have died. Under those circumstances, her state of sobriety was irrelevant.

PCRA Ct. Op. 01/09/01.

Under the AEDPA, the factual determinations of the state court are presumed accurate and will not be disturbed absent "clear and convincing evidence." *Stevens*, 295 F.3d at 368; *see also* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence").

Petitioner has not introduced clear and convincing evidence to refute the PCRA Court's summary of the testimony against him. The PCRA Court's determination that the victim's sobriety was irrelevant, due to the wealth of evidence against petitioner, is therefore entitled to a presumption of correctness. The Superior Court's reliance upon this determination, in turn, was reasonable, and its subsequent conclusion that counsel was not ineffective for failing to introduce evidence of an irrelevant state of intoxication is therefore also reasonable.

Under *Strickland*'s deferential standards, courts cannot hold an attorney to be ineffective for failing to introduce irrelevant or unhelpful evidence. Petitioner's trial counsel's performance, therefore, was not deficient and the Superior Court's holding that he was constitutionally effective was a proper application of *Strickland*. Petitioner's sixth claim will be denied.

## G. Counsel's Advice that Petitioner Relinquish his Right to Testify

In his seventh claim for federal habeas relief, petitioner alleges that his trial counsel was ineffective for advising him that he should not take the stand on his own behalf due to the potential for damaging cross-examination and impeachment by way of his prior convictions. This issue was addressed by the Pennsylvania Superior Court on direct appeal, which held:

> Appellant next claims that trial counsel was ineffective for advising Appellant not to testify on his own behalf because trial counsel erred in believing Appellant could be cross-examined as to prior <u>crimen falsi</u> convictions. We find no merit to Appellant's claim. Trial counsel testified that he was concerned Appellant's prior conviction for conspiracy to intimidate a witness would be brought up by the Commonwealth should Appellant take the stand. This prior conviction, which is within the ten year window of <u>Commonwealth v. Randall</u>, 515 Pa. 410, 415 (1987), and also included a conviction for conspiracy to maliciously damage a building by means of fire, involved an instance where Appellant and another individual, in response to being "flagged" from a bar, participated in a plan to burn the bar down. While fighting the blaze, a firefighter lost his life. Understandably, trial counsel did not want these facts to come out at trial, expecially

39

where the Commonwealth in the instant case had presented testimony that Appellant had attempted to influence a witness from testifying, see infra. Contrary to Appellant's claim, we conclude that such a conviction is arguably a crime involving crimen falsi. In addition, and contrary to Appellant's belief, the fact that Appellant's prior convictions for the crimen falsi crimes of burglary, larceny, and receiving stolen property are outside the ten year window of Randall, does not mean that the convictions could not, under any circumstances, be used by the Commonwealth for impeachment purposes.

Even if trial counsel may have been in error with regard to the advice given Appellant regarding his prior convictions, we cannot conclude that Appellant was prejudiced by counsel's advice since trial counsel also provided additional reasons why he advised Appellant not to take the stand. As a matter of trial strategy, counsel was aware that Appellant's statement had already been read into evidence during the Commonwealth's case-in-chief. Thus, counsel was of the opinion that Appellant's version of what occurred was before for the jury without providing the Commonwealth an opportunity to cross-examine on the statements contained therein. Thus, counsel cannot be found to be ineffective.

Super. Ct. Op. 8/19/97 at 12-13 (citations omitted).

The Superior Court properly applied *Strickland* on this issue. At the evidentiary hearing, petitioner's trial counsel explained in great detail the strategic considerations that went into his decision to advise petitioner not to take the stand. He noted that the prosecution had already read petitioner's statement into evidence, such that there was no need to elicit petitioner's version of the events in question by calling him to the stand. Transcript 7/2/96 at 35-36 (attached to Doc. #4 as Ex. D). Trial counsel also explained that he had several other reasons for not wanting petitioner to testify:

[Petitioner] had a prior conviction of crimen falsi. He had a prior conviction for conspiracy to intimidate a witness. There were allegations of it in their case of intimidation of witnesses. There was the entire issue of whether he was a member of the Warlocks motorcycle gang. Whether he had made representations that if they testified, either he or other members of the Warlocks motorcycle gang would retaliate. There was– that was an issue and I didn't want necessarily to have him address that on cross-examination. And there were some other issues as to his beliefs regarding the incident.

*Id.* at 36-37. Trial counsel's strategies were well-reasoned and adequately supported by the

40

myriad of reasons he provided at the evidentiary hearing quoted above.  Moreover, under *Strickland* trial counsel is entitled to a "strong presumption" that his tactical decisions were sound.  *See Strickland*, 466 U.S. at 689; *see also Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

The Superior Court also properly concluded that petitioner did not suffer prejudice from trial counsel's decision that he ought not testify.  His version of the events at T's Sports Bar were in evidence; his live testimony, therefore, could only have been corroborative.  This court notes, in assessing the prejudice allegedly suffered by petitioner, that to demonstrate prejudice under *Strickland* petitioner must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at 687.  Even assuming for purposes of argument that counsel's advice was erroneous, it was petitioner himself who decided not to take the stand and reiterate his account of the confrontation– an account already in evidence.  If there was error in counsel's advice, it was not the type of serious error which can render an entire trial unreliable.  The Superior Court's analysis, accordingly, was not an unreasonable application of, nor contrary to, federal precedent.  Petitioner will be denied relief on his seventh habeas claim.


H. The Trial Court's Alleged "Gross Misinterpretation" of Petitioner's Statement to the Police

In petitioner's eighth claim for habeas relief, he alleges that his trial counsel was ineffective for failing to object to the court's "gross misinterpretation," while giving jury instructions, of petitioner's written statement.

41

Petitioner provided a handwritten statement to the police, the relevant portion of which read "I was scared that she would attack me again as befor[e] I could see clearly again. So I swung at her with my helmet one time only." Super. Ct. Op. 8/19/97 at 7. This statement was read to the jury in its entirety.

During its charge to the jury, the trial court discussed this statement:

Now what the defendant said, since the inception, which will go out with you, even though it had been read to you, it will go out as an exhibit and will be able to peruse it in the jury room, concerning why he did what he did with the helmet. He said amongst other things, that he was scared that she would attack again as before. I could see clearly again, so I swung at her with my helmet, one time only. It was not my intention to injure her, only to defend myself until I could figure out what was going on.

Transcript 11/14/95 at 109. Petitioner argues that "trial court turned what was an exculpatory admission by petitioner, into a highly incriminating admission of guilt." Objections at 45. His attorney's failure to object to this portion of the charge, according to petitioner, therefore constituted ineffective assistance of counsel.

The Superior Court addressed this claim on direct appeal, and found that no material misstatement had been made by the trial court: "[w]hen the statement is read in its entirety, it does appear that Appellant was stating that, once he could see clearly, he swung at the victim." Super. Ct. Op. 8/19/97 at 8. More importantly, noted the Superior Court, petitioner failed to demonstrate prejudice arising from this alleged misstatement:

[E]ven if the trial court did misconstrue this statement, Appellant has not demonstrated prejudice. In the present case, the trial court specifically instructed the jury that 'You and you alone will determine what the facts are in this case...I do not tell you what the facts are.' Additionally, the record indicates that Appellant's statement was given to the jury during its deliberations. Thus, the jury had ample opportunity to review the exact statement. Appellant's claim that the jury would assign more weight to the trial court's

42

reiteration of a portion of the statement, rather than the whole statement as read to them and possessed by them during deliberations, is no more than speculation.

*Id.* The Report & Recommendation adopted this analysis as well. Petitioner objects to this line of reasoning, however, claiming that the trial court's statement was a material misrepresentation in violation of Pennsylvania law.

Pennsylvania law clearly permits a judge to "summarize evidence"– as the trial judge did in this case– so long as such a summary contains no "material misstatements." *Commonwealth v. Pelzer*, 612 A.2d 407, 413 (Pa. 1992). "Summarizing evidence is not the equivalent of expressing an opinion as to the conclusions to be drawn from conflicting evidence," *id.*, however, thus petitioner's concerns about the undue import potentially accorded to the trial judge's opinion, by the jury, is unfounded. The trial judge expressed no opinion as to whether petitioner could or could not "see clearly" when he swung at the victim; instead, he summarized the substance of petitioner's statement. In so doing, he repeated petitioner's statement word for word, with a slight alteration in punctuation only.[18]

I need not determine whether the trial court's summary was technically a misstatement, however, as petitioner cannot demonstrate prejudice from the court's jury instruction. As the Superior Court noted, the statement in question was given to the jury to read and review during its deliberations. Any discrepancy in punctuation, therefore– or any confusion suffered by the jury regarding the content of the statement– would have been easily resolved by a review of the

---

[18]It is worth noting that the transcript upon which petitioner relies was created by the court reporter, who– despite accurately transcribing the words of petitioner's statement– could have made a typographical mistake with respect to the punctuation of the judge's re-reading of the statement.

statement by the jury itself. While it may appear to petitioner that his words were unfairly distorted, it is important to keep in mind that a petitioner must– in order to demonstrate prejudice– show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 687. Counsel's failure to object to a minor verbal alteration in the punctuation of a statement already in the jury's possession certainly does not rise to this level of injustice and prejudice. The Superior Court's analysis, therefore, comports with the standard enunciated in *Strickland* and federal habeas relief is inappropriate.

I. Counsel's Failure to Argue Relevant Points of Law During Closing Argument

      In his ninth and final claim for federal habeas relief, petitioner argues that trial counsel's closing argument was so lacking in legal substance that it amounted to ineffective assistance of counsel. More specifically, he finds fault with trial counsel's failure to "argue that the prosecution had not shown sufficient evidence of provocation or, that the level of intent and of recklessness had not been proven." Pet. Writ Habeas Corpus at 10B. Petitioner also contends that trial counsel should have argued, during his closing, "that the charge of indecent assault had been dismissed by trial court at the close of evidence." *Id.*

      Petitioner raised this claim on direct appeal. Noting that it was hampered by the lack of a transcript of counsel's closing argument, the Superior Court held that its "review of trial counsel's recollection regarding his closing argument to the jury indicates the 'chosen course [had some reasonable basis] designed to effectuate [Appellant's] interests.'" Super. Ct. Op. 8/19/97 at 14 (citations omitted).

Though the Superior Court failed to elaborate upon trial counsel's recollections, Mr.

McHugh testified extensively, during an evidentiary hearing, as to the facts and theories he took

into consideration in delivering his closing argument:

> I made arguments about Katie Maschal's testimony. And I made argument[s] that the Commonwealth said that they would prove these facts and that they had not proven those facts. One of the facts they said they would prove was indecent assault, that hadn't been proven.
>
> * * *
>
> I remember arguing to the jury that when Jim was leaving the bar, he had been sucker-punched by Katie Maschal. That he was reeling, his glasses had been knocked off. He didn't have his glasses on, had a glass eye and had been struck in the other eye. That there was evidence that Katie Maschal was coming at him, charging him a second time, from the side. It didn't matter which side it was, whether it was the side he had the glass eye or the side that his glasses had been knocked off. That he swung his helmet a single time in an upward motion. I remember arguing after that, that no one in the bar thought it was a serious contact between the helmet and her skull, because the police weren't called. The ambulance didn't come and didn't think she was hurt enough to call the ambulance. And that Jim didn't think she was hurt and that he left. That it was a single isolated incident. I remember the main argument being that he certainly did not intend to cause that injury. He didn't negligently cause it, didn't recklessly cause it. That was the thrust of my argument, which I think was the thrust of the whole defense in this case. He never intended to cause that injury. And that is the act, and when you take them as a whole with all the other acts in that bar, he was not negligent or reckless[] as defined by the law. It was an unfortunate incident. He had taken responsibility for it by making a statement. He cooperated with the police throughout the entire time. This was a single blow. That was what the argument was.

Transcript 7/2/96 at 47-49. In light of *Strickland*'s strong presumption that counsel's strategic

decisions were the result of "reasonable professional judgment," *Strickland*, 466 U.S. at 690, the

Third Circuit has counseled that it is "only the rare claim of ineffectiveness of counsel that

should succeed under the properly deferential standard to be applied in scrutinizing counsel's

performance." *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989). Only where the

"deficiencies in counsel's performance are severe and cannot be characterized as the product of

45

strategic judgment" will deficient performance be found.  *Id.*

No such "severe" deficiency occurred during trial counsel's closing argument.  While petitioner believes that his attorney's closing statement could have included additional legal argument and a more extensive review of the charges brought against him, it is precisely this type of post-conviction second-guessing against which *Strickland*'s standard is intended to protect. *See Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable...A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.").  As the Supreme Court noted in *Strickland*, "effective assistance" encompasses countless different strategies and tactics; "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."  *Id.*  Petitioner's suggestion, then, that his approach to a closing argument would have been superior– where trial counsel's own closing argument was the clear result of strategic thinking and carefully-formulated defense– cannot give rise to a finding of deficient performance.

Petitioner has failed to demonstrate that his attorney's closing argument constituted ineffective assistance of counsel.  He is therefore not entitled to habeas relief on his ninth claim.

J. Totality of Counsel's Errors

In addition to petitioner's nine specific allegations of ineffectiveness, he also suggests that the cumulative effect of his trial counsel's performance was so prejudicial as to deprive him of a fair trial and thus amount to ineffective representation in general.

The Third Circuit has held that "errors that individually do not warrant a new trial may do so when combined." *Marshall v. Hendricks*, 307 F.3d 36, 94 (3d Cir. 2002). In petitioner's case, however, aggregating all the alleged errors and viewing them in conjunction with the trial proceedings and appellate review does not– in light of the quantity and quality of the evidence against petitioner– compel the conclusion that petitioner was denied a fair trial. As discussed above, not one of petitioner's ineffective assistance claims has merit. The cumulative effect of each non-error does not add up to error; as the saying goes, zero plus zero equals zero.

While the court is sympathetic to petitioner's plight, and appreciative of the time and energy he has spent briefing these issues, the simple fact remains that petitioner's trial counsel served him well. With years of hindsight, it is unsurprising that petitioner has identified ways in which his trial could have been conducted differently, and ways in which he believes trial counsel could have advanced his defense more effectively. A criminal defendant, however, is not entitled to a flawless trial or a perfect attorney; instead, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. No attorney is perfect– the Sixth Amendment, however, guarantees a reasonably effective attorney, which petitioner received in this case.[19]

---

[19]For each of his nine claims, petitioner argues not only that trial counsel was ineffective, but that appellate counsel was ineffective as well for failure to raise the issue of trial counsel's

## IX.    CONCLUSION

Petitioner's trial took place almost nine years ago.  At trial his counsel presented evidence, employed a clear strategy in his defense, and advocated on his behalf.  Since that time, petitioner has sought– and obtained– review of the above allegations of trial error in the Pennsylvania Superior Court, twice; in the PCRA Court in Bucks County; and in the Pennsylvania Supreme Court in the form of petitions for allocatur review.  He has submitted four lengthy memoranda in support of his claims to this court, which were reviewed first by United States Magistrate Judge Carol Sandra Moore Wells and then by this court.  Not one reviewing judge has found merit in petitioner's claims of constitutional error.

I am convinced that petitioner has received a thorough, incisive, and comprehensive review of the constitutional errors he alleges to have occurred at his trial.  His trial counsel, however, provided petitioner with professional and effective legal counsel throughout trial.  Not one of the alleged errors constitutes deficient performance according to prevailing professional norms, and no prejudice resulted from the actions of which petitioner complains.  Petitioner's claim for federal habeas corpus relief, therefore, will be denied.

---

deficient performance.  Because I have found no merit to petitioner's allegations of error with respect to his trial counsel, it follows that his appellate counsel must also be held to be effective. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument").

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES DUNLAVEY, | : | |
|          Petitioner | : | |
| | : | CIVIL |
| | : | NO. 02-3734 |
|       v. | : | |
| COURT OF COMMON PLEAS AND | : | |
| PROBATION OFFICE OF BUCKS COUNTY, et al., | : | |
|          Respondents | : | |

**Order**

YOHN, J.

And now on this _____ day of July 2004, upon careful and independent consideration of the petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. #1); the Petitioner's Reply & Traverse, the Report and Recommendation of United States Magistrate Judge Carol Sandra Moore Wells, petitioner's Objections to the Report and Recommendation, and Petitioner's supplementary Rebuttal; and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1.     Petitioner's objections are OVERRULED;

2.     The Report and Recommendation of Magistrate Judge Carol Sandra Moore Wells is APPROVED and ADOPTED as supplemented herein;

3.     The petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 is DENIED;

4.     The petitioner having failed to make a substantial showing of the denial of a constitutional right, there is no ground to issue a certificate of appealability, *see* 28 U.S.C. § 2253(c); and

5.     The Clerk shall CLOSE this case statistically.

_____
William H. Yohn, Jr., J.

49